## WILLIAM H. BEARD DREDGING CO. v. HUGHES et al.

(Circuit Court of Appeals, Second Circuit. March 6, 1903.)

No. 61.

1. SHIPPING—DAMAGES FOR BREACH OF CHARTER—SALE OF VESSEL BEFORE EXPIRATION OF TERM.

Respondents hired from libelant, for a stated term, at a stipulated rental per day, certain named vessels, consisting of a dredge and attendant scows, composing a dredging plant. Before the expiration of the term, respondents returned the vessels, without notice; and some days later, and before the expiration of the term, libelant sold the dredge. *Held*, that it could not recover the contract rental for the plant after the date of such sale, which placed it out of its power either to perform the contract thereafter, or to reduce the damages for its breach, as it was bound to do, by otherwise using or leasing the plant, if that could be done in the exercise of reasonable diligence.

2. SAME—INJURY OF CHARTERED VESSEL—LIABILITY.

A charterer is liable for an injury to a scow resulting from the negligence of a tug hired by him to tow the same.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal by both sides from a decree awarding $4,445.49 damages to libelant upon breach of a contract of hiring. The facts appear in the opinion.

L. D. Smith, for libelant.

Chas. M. Haugh, for respondents.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The libelant, a dredging company, hired to defendant's firm, Hughes Bros. & Bangs, a dredging outfit, which is described in the letter signed by libelant, and setting forth the terms of the contract as follows:

"The combination dredge Sampson with crew of eight men and equipment for dredging at New Haven, Conn. also three scows No. 1 X 572 yards, No. 2 X 643 yards and No. 3 X 644 yards."

The rent stipulated was $150 a day, "time to begin when the plant commences work at New Haven, minimum time to be three months." The other details of the contract are not material to the questions raised on this appeal. The plant was delivered to the respondents under the contract on March 18, 1901. They used it for some weeks, and on May 2, 1901, without notice to libelant, the whole plant—dredge equipment and scows—were returned by respondents to libelant at the Erie Basin, New York Harbor. Respondents paid the hire down to the date of this return, and concede that they broke their contract of hiring, and are liable for the damages properly assessable for such breach. On May 6th libelant sent them a letter, protesting against the breach of contract, and making a tender and offer to fulfil. On May 16th libelant sold the dredge Sampson to one Dady for $20,000. While the plant was in use at New Haven, scow No. 2 was found to be leaking so fast that, apparently with the assent of both parties, she was returned to libelant, and another scow substituted in her place, which new scow remained with the

rest of the plant until the entire outfit was returned. On April 5th, scow No. 3, while in charge of the tug Hogan, which had been hired by Hughes Bros. to do what towing might be required, was run upon some rock near the entrance of New Haven Harbor, and badly damaged.

The libel was filed to recover the hire of the entire plant ($150 a day) from the time of the last payment by Hughes Bros. to the 18th of June, the cost of repairing scow No. 2, and also the cost of repairing scow No. 3. The District Judge (113 Fed. 680) held that the evidence failed to show negligent handling of No. 2, and that respondents were not liable for damages sustained by her, but that the injuries sustained by No. 3 were caused by negligent towage, and that the hirer was responsible therefor. He further held that there could be no recovery for damages, in the nature of hire, after the dredge was sold, and expressed the opinion that the libelant should have a "decree, with an order of reference." This interlocutory decree is not found in the record. From a recital in the decree appealed from, it would appear that the cause was referred to a commissioner to take testimony, ascertain the amount due for charter moneys and for damages to scow No. 3, and report thereon. Neither his report, nor the proofs taken before him, are contained in the record, and the final decree gives only the "aggregate of charter moneys and damages" as $4,445.49. How much of this sum is for damages to the scow, and how much for charter hire, we are unable to determine, except by inferences drawn from the assignments of error and from statements in the brief.

The libelant appealed from the refusal to allow damages for scow No. 2, and from refusal to allow charter monies from and including May 16 to and including June 18, 1901. The respondents appealed only as to allowance of damages for injuries to scow No. 3.

What rule was followed by the commissioner in fixing the damages for breach of contract to hire—whether he took the entire per diem down to May 15th, or reduced it by any allowance for what libelant might have obtained by using the plant so as to reduce damages (Johnson v. Meeker, 96 N. Y. 96, 48 Am. Rep. 609)—is not clear upon the proof. Evidently the respondents were of the opinion that all proper allowances in their favor had been made, since they do not assign error in the assessment of damages. The libelant contends that it should receive the full charter hire down to the expiration of the full three months. The measure of damages for breach of a contract such as this is well settled. It is the full rent stipulated to be paid, reduced by such sums as the owner has actually received by the use of the returned property, or could have received, had he been reasonably diligent to put it to use. For it is his duty to do what he reasonably can to reduce the loss in this way. The difficulty with the case at bar is that we have nothing before us from which we can determine what amount of money might have been secured by a reasonable effort to rent the property to some one else. It is quite likely that such proof was not made because the libelant had made it impossible to procure it. The plant which respondent hired was a precisely described whole, made up of specified parts,

to wit, dredge, scows, equipment, and men. Moreover, the particular dredge was itself specified—"the combination dredge Sampson." Libelant would not have fulfilled its contract by sending to New Haven a plant with some other dredge, unless both parties agreed to the substitution, as they did when No. 2 was found to be leaky. When libelant sold the dredge, he destroyed the corpus of the contract. He was no longer in a position to return it to Hughes Bros., had that firm decided to reduce their loss by putting it to use again for the rest of the time contracted for. He was no longer able to reduce the amount of damages by hiring the plant to others. Upon the record as it stands, the court is without the data upon which to assess damages for breach of contract in accordance with the rule, and therefore will not disturb the finding of the District Court in that particular.

As to the claim for damages to scow No. 2, the proof did not warrant a recovery. All that appears is that on March 29th or 30th, after a return from sea, she was leaking so badly that she was put out of commission; but she had been leaking before—making so much water that during the time she was in use they could not load her to her full capacity. For aught that appears, it may well be that her seams opened more than usual under the strain of work for which she was not fit. Certainly no negligent act of any one put in charge of her by Hughes Bros. is shown, and the evidence as to the condition as to seaworthiness of the scow when she was turned over to them is not especially persuasive. All that appears is that. the president was aboard the scow the day she left, when she was lying in still water at her berth and unloaded, and thought her to be sound and stanch. No one who had observed her behavior in use before delivery was called to testify to her seaworthiness.

As to scow No. 3, the respondents admit that she was injured by striking a rock while in tow of a tug of the New Haven Steamboat Company. We have no explanation of the occurrence from the master or from any one on board the tug, and, so far as the record shows, the circumstances indicate negligent navigation on the part of the tug. The tug was hired by Hughes Bros. to tow the scow, and the case is not to be distinguished from Gannon v. Consolidated Ice Co., 33 C. C. A. 662, 91 Fed. 539.

The decree of the District Court is affirmed, but, as both parties appealed, the affirmance is without interest or costs.