## THE THREE BROTHERS.

### (District Court, S. D. New York. February 3, 1905.)

SHIPPING—INJURY OF SCOW WHILE BEING TOWED IN ICE—NEGLIGENCE AS BAILEE.

> The city of New York *held* liable for injury to a scow in its employ from floating ice while being moved to a safer place in North river by a tug, also employed by the city, on the ground that it failed to exercise ordinary care as bailee in permitting the scow to remain moored at an obviously dangerous place in the winter.

In Admiralty. Suit to recover for injury to boat by ice.

James J. Macklin, for libellants.

Alexander & Ash, for the Three Brothers.

John J. Delany and E. Crosby Kindleberger, for the City of New York.

ADAMS, District Judge. This action was brought by John Lane and another, as owners of the scow Walter J., to recover from the steamtug Three Brothers the damages caused by contact with ice in the North River on the 5th day of February, 1902. The owners of the tug brought in the City of New York by petition. John Lane subsequently died and the action, on his part, was continued by Jennie A. Lane, as his administratrix.

The scow was in the employ of the city and lying, with three others, in an exposed position at the foot of 134th Street, North River. The Three Brothers was also in the employ of the city and was paid by the hour for what she did, and at an increased rate of compensation on account of work in ice. The increased rate was intended to cover such risk as the tug herself might be subjected to by reason of the nature of the work.

On the day in question, considerable ice was running in the river, causing apprehension of danger to the scows on the part of the city officials in charge of them, and they requested the tug to remove the scows to 50th Street, North River. The tug, it is asserted by the claimant, declined to undertake the work until assured by the said officials that all risk to the scows, incident to their removal, would be assumed by the city. The city officials in charge at 134th Street deny the assumption of the risk, or their authority to make such a contract. It is admitted in the pleadings that the removal was requested. The dumping place at 134th Street was obviously dangerous if ice were running which was to be anticipated and provided against in the winter season.

The tug upon receiving the desired assurance, it is said, made fast to the scows with two hawsers, of about 100 feet in length. The

tow was made up tandem, the scows being fastened within a few feet of each other. The Walter J. was next to the last in the tow. The tide at the time was ebb and large quantities of heavy ice were brought down the river.

The destination was down the river but on account of the tide and ice, the tug took a course across but headed somewhat up the river. When the tail of the tow was about 200 feet out from the pier at 134th Street and a little below, the tow was caught in some heavy ice and carried by the tide, which at that place set on the eastern shore of the river, to 132nd Street, where the Walter J. was injured and, with another scow, was left while the tug took the others to their destination.

The libellant claims that the tug is responsible because she was not of sufficient power to control or handle the scows.

The tug claims that the risk from the ice was assumed by the city and that the lines of the Walter J. were insufficient.

The tug was of ample power for ordinary towing of 4, or more, scows. There is no evidence to support the claim of insufficient lines. The injury was caused by the ice in the river and the question to be determined is, was the tug, the city, or both, responsible for it?

The exact relations of the city to the scow are not shown by the evidence but it appears that she was in the employ of the city and it is contended, in its brief, that the only liability of the city was for the ordinary care due from a bailee for hire. Assuming that the contract was, as contended by the city, it was incumbent upon the city in the exercise of its duty not to leave the scow exposed to obvious danger from the ice. In taking her away from 134th Street, the city used the tug as an instrument. The tug was apparently not to blame for what followed. She had no lookout, but the absence of one was not charged as a fault and was seemingly immaterial. She was apparently doing the best she could under difficult circumstances. I do not hold the city because of any contract on its part with the tug to assume the risk of the towing but because the owners were entitled to more care of the boat than was shown when it was moored, or suffered to remain, in the dangerous locality at 134th Street. The liability turns upon the bailee's undertaking to use ordinary care of the property in its custody. Gannon v. Consolidated Ice Company, 91 Fed. 539, 33 C. C. A. 662; Smith v. Booth (D. C.) 110 Fed. 681, 684; W. H. Beard Dredging Co. v. Hughes (D. C.) 113 Fed. 680, affirmed 121 Fed. 808, 58 C. C. A. 192.

The libel is dismissed as to the tug and the libellant will have a decree against the city, with an order of reference.