## THE GENESSEE.

(Circuit Court of Appeals, Second Circuit.   April 13, 1905.)

No. 145.

TOWAGE—LIABILITY FOR LOSS OF TOW—NEGLIGENCE OF TUG.

Libelant's boat was one of 18 composing a tow being taken by a tug and helper from Perth Amboy to New York in the night.   On account of a high wind, the tow lay to outside of another tow at a dock; the tide being then flood, and the wind from the opposite direction.   When the tide changed during the night the tow started to swing around, and, under the influence of the wind and tide, a scow in the tier behind overran and sank libelant's boat.   *Held*, that the accident was one which should have been anticipated and guarded against by the tug, and, in the absence of evidence that any effort was made in that behalf, she was liable for the loss.

Appeal from the District Court of the United States for the Southern District of New York.

H. G. Ward, for appellant.

La Roy S. Gove, for appellees.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

PER CURIAM.   This is a case in which a vessel in tow has been lost, without any fault on her part, while in the custody of a tug. The libelant's boat, known as "No. 53," was one of a flotilla of 18 boats arranged by the master of the tug Genessee at Perth Amboy to be taken by that tug and her helper, the tug Ganoga, to New York.   The flotilla was made up in tiers of four or five boats each, No. 53 being the outside starboard boat of the third tier.   Behind No. 53 (being the outside starboard boat of the fourth tier) was the scow No. 47, attached to the stern of No. 53 by two lines, and also fastened by lines (one from her stern and the other from her bow) to the boat T. L. Rose and the boat Grace F.; the former being next inside the scow, and the latter next inside No. 53.   The flotilla left Perth Amboy at midnight.   When it neared Bay Wind the wind was so violent that the master of the Genessee deemed it unsafe to proceed, and decided to lay up near the dock there and wait for the wind to subside.   Another tug and flotilla were lying next to the dock.   The Genessee made fast to the other tug, and consequently the flotilla of the Genessee was obliged to lie outside of the other flotilla, and was exposed to the full force of the wind. The helper, Ganoga, made fast to the outside port boat of the first tier.   At the time the tide was running flood, and, notwithstanding the wind was from the contrary direction, the effect of the tide was to stretch the boats out upon their hawsers.   Before daylight the tide changed and the flotilla swung around, and under the influence of the wind the boats began to jump and pound against each other with great violence, and the scow No. 47 sank the libelant's boat.   It is quite impossible to determine just how the accident happened, because in the dark no one saw or could see accurately what took place.   We place no reliance upon the statement of the

captain of the libelant's boat. He was aroused to find his boat sinking. His thoughts were directed to his own safety, and, although he may have thought he saw what he testified to, his testimony has no value. We are satisfied that the scow ran on top of the libelant's boat, riding over her stern and pressing her down into the water until she sank. The scow was a heavily built boat, but was carrying no cargo. Her deck was about 9 feet above the water; her square stem projected at the deck 10 feet beyond the line at her bottom; and she was 33 feet beam. The libelant's boat was of 26 feet beam. She was heavily laden, and her deck was only 2 or 3 feet above the water line. Notwithstanding the scow was fastened by lines to the T. L. Rose and the Grace F., these lines, during the forward movements of those vessels, and while they were forging ahead, would not restrain the scow from running over the libelant's boat. The relative arrangement of the scow with the libelant's boat may have been a reasonably safe one while the flotilla was under way and proceeding against the tide, but when it lay to during the storm, and a change of tide was near, that arrangement involved a risk that just such an accident might happen as actually did happen. Because of the heavy wind behind the flotilla, the libelant's boat, under the circumstances, was exposed to peril from the sharp overhanging bow of the scow, and we think that this was a peril which ought to have been anticipated by those who were responsible for the safety of the flotilla. No effort was made on the part of the tug or of her helper, after the flotilla laid to, to ascertain whether the rear boats of the flotilla were riding safely, or whether anything ought to be done to mitigate the risks to which they were exposed. The case is a proper one for the application of the rule that a presumption of negligence arises against a bailee for hire when it appears that the subject of the bailment has been injured or destroyed while within his custody by an accident such as in the ordinary course of things does not happen when a bailee uses due care.

The decree is affirmed, with interest and costs.