## BLEAKLEY v. CITY OF NEW YORK.

(District Court, S. D. New York. July 28, 1905.)

1. Shipping—Injury of Chartered Vessel by Ice—Negligence of Charterer.

A charter of a scow under a verbal charter being bound as a bailee for hire to use reasonable care and diligence to protect the property from injury is liable for its loss by being crushed by floating ice, where it was left on the north side of a pier in North river at a place exposed on the north, and generally regarded as dangerous on an ebb tide when there was ice moving in the river.

2. Same—Inevitable Accident.

An injury to a vessel which could have been foreseen and might reasonably have been expected in the ordinary course of events cannot be considered as happening through inevitable accident.

In Admiralty. Recovery of damages for the sinking of scow, hired by the city, from contact with ice, while lying on the northerly side of pier at foot of 134th Street, North River.

Alexander & Ash, for libellant.

John J. Delany and E. Crosby Kindleberger, for respondent.

ADAMS, District Judge. This action was brought by Cara R. Bleakley to recover the damages she suffered in consequence of injuries to her scow No. 38, by reason of being crushed and sunk by ice at the pier at the foot of 134th Street, North River, on the 22nd day of February, 1904. The scow was hired by the city for an indefinite period under a verbal charter and was being used, under the control of the Department of Street Cleaning, to remove street sweepings from the northerly part of the city. For that purpose she was sent to 134th Street and at first moored on the south side of the pier. Subsequently she was moved under the dumping board on the north side of the pier, where she received a load and was afterwards sunk.

The question of liability arises out of the alleged neglect of the performance by the city of its duty to the scow under its relation of bailee for hire. There is no substantial controversy with respect to the measure of such duty, it being well established that the bailee is bound to exercise the diligence of a prudent man with respect to the property in his charge and for any default is responsible to the owner. Smith v. Bouker, 49 Fed. 954, 955, 1 C. C. A. 481. And see The Three Brothers (D. C.) 134 Fed. 1001. The city contends that it performed its duty and that the accident was an inevitable one. The libelant on the other hand urges that there was a failure on the part of the city to observe the care which it owed to the boat.

It appears from the testimony that the place in question has been quite generally regarded among boatmen, having that class of business to perform, as a dangerous place on the ebb tide when there is ice moving in the river. The city's witnesses, not experienced as boatmen, say that it is not a dangerous place under such circumstances, as is proved by the fact that very few accidents have happened. Some accidents have, however, occurred, causing injury to boats subject to the ice and that a greater number could not be shown is probably being due to good fortune more than proper management, because the place having no protection from the north and the ebb tide setting the ice on the pier, it is obviously not a place where boats can be left with any reasonable assurance that they will not be injured.

There is no merit in the contention that the accident was inevitable. With the exercise of proper care, the result could have been anticipated and provided against. An accident which could have been foreseen and expected in the ordinary course of events can not be considered as happening without the agency and neglect of man. It is apparent that the ice which had collected about the pier, would leave there upon a change of wind, which was liable to occur at any time, and being set free from the shore and carried up the river, it would be borne by the tide against the northerly side of the pier upon a change of the tide to ebb. That is what happened here. The fact that the ice was brought back in a large and dangerous field might have been expected. Doubtless in many instances, the ice broke away in smaller quantities and was more or less ground up before its return, so that it was not harmful in its effects upon the boats lying there, but it is well known that moving ice is dangerous to ordinary boats and when possible that they should be kept free from its contact. Risk to a boat lying on the northerly side of the pier when ice was in the river and liable to be carried against it was a matter which should have been taken notice of. The case is distinguishable from The Transfer No. 2 (D. C.) 56 Fed. 313, on such ground and is more in accord with The Ship John Tucker, 5 Ben. 366, Fed. Cas. No. 7,431, where Judge Blatchford said (page 370 of 5 Ben. [Fed. Cas. No. 7,431]):

"But the circumstances do not bring it within the category of a case of inevitable accident. Union Steamship Co. v. N. Y. & Va. Steamship Co., 24 How. 307 [16 L. Ed. 699]; The Morning Light, 2 Wall. .550 [17 L. Ed. 862]; The Louisiana, 3 Wall. 164 [18 L. Ed. 85]; Vantine v. The Lake, 2 Wall. Jr., 52 [Fed. Cas. No. 16,878]; The Moxey, 1 Abb. Adm. Rep. 73 [Fed. Cas. No. 9,894]; The Brooklyn, 4 Blatchf. 365 [Fed. Cas. No. 1,939]; The Baltic, 2 Ben. 452 [Fed. Cas. No. 823]. The movement of the ice, with the ebb tide, which was the cause of the damage, was not a thing that arose suddenly and unexpectedly, but was to be anticipated and guarded against by the ship, even if her attention had not been specially called to it by the steamboat. It was not a vis major, in the sense of the rule. The ship was bound to secure herself so that her fastenings would not be broken or torn away, when the tide should change."

It seems that the city was consulting its convenience in the removal of sweepings etc. from the northern part of the city and

urges the necessity of the use of the pier for such purpose. While it was doubtless expedient to use the pier, such plea can have no effect in relieving a bailee from results due to its neglect of duty to the particular piece of property which it has hired and impliedly undertaken to return uninjured to the owner, save from ordinary wear and tear, if reasonable care and prudence will accomplish the result.

Decree for the libellant, with an order of reference.