## THE THREE BROTHERS.

(Circuit Court of Appeals, Second Circuit. April 2, 1906.)

No. 124.

SHIPPING—INJURY TO SCOW BEING TOWED IN ICE—NEGLIGENCE AS BAILEE.

The city of New York *held* liable for injury to a hired scow from floating ice while being moved by its direction to a safer place in North river by a tug also in its employ, which performed its work in a proper manner, on the ground that the city failed to exercise ordinary care as bailee in permitting the scow to remain until such time in a place which was dangerous in winter time when ice was running.

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 134 Fed. 1001.

This cause comes here on appeal from a decree of the United States District Court for the Southern District of New York, holding the city of New York solely responsible for damages resulting from injury to libelants' scow Walter J. by reason of floating ice striking her and cutting into her side while she was in tow of claimant's tug Three Brothers. The opinion of the court below (reported in 134 Fed. 1001) accurately states the facts showing the relations of the parties in interest and the circumstances connected with the injuries received as follows: "The scow was in the employ of the city, and lying, with three others, in an exposed position at the foot of 134th street, North river. The Three Brothers was also in the employ of the city, and was paid by the hour for what she did, and at an increased rate of compensation on account of work in ice. * * * On the day in question considerable ice was running in the river, causing apprehension of danger to the scows on the part of the city officials in charge of them, and they requested the tug to remove the scows to 50th street; North river. * * * The tug * * * made fast to the scows with two hawsers, of about 100 feet in length. The tow was made up tandem, the scows being fastened within a few feet of each other. The Walter J. was next to the last in the tow. The tide at the time was ebb, and large quantities of heavy ice were brought down the river. The destination was down the river, but on account of the tide and ice the tug took a course across but headed somewhat up the river. When the tail of the tow was about 200 feet out from the pier at 134th street, and a little below, the tow was caught in some heavy ice, and carried by the tide, which at that place set on the eastern shore of the river, to 132d street, where the Walter J. was injured, and, with another scow, was left while the tug took the others to their destination." The tug then returned to the Walter J. and the other scow, and hauled them out into the river, when the captain of the Walter J. informed the master of the tug that she was leaking, and before he could reach her and pump her out she capsized. The court below held the city liable, upon the ground that it had failed to use the ordinary care of the property in its custody which was required of it upon its undertaking as bailee.

E. C. Kindleberger, for appellants.

Peter Alexander, for claimant.

La Roy S. Gove, for libelants.

Before LACOMBE, TOWNSEND and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The assignments of error challenge the correctness of this decision, on the ground that the damage did not occur through any negligence on the part of the city, but

through the negligence of the tug, in the performance of its towage service under conditions known to be dangerous, in attempting to tow the four scows at once when her power was insufficient, in not keeping a proper lookout, and in not taking proper care of the scow after it had been injured. Inasmuch as the removal was at the request of the city officials, no blame could be imputed to the tug for complying with said request in a proper manner. The uncontradicted evidence of the officers of the tug that she was abundantly able to perform the towage service upon which she was engaged, the indications, in view of the evidence, that under the conditions encountered it would have made no difference whether there had been four boats or only one in tow, and the fact that the absence of a lookout was not charged as a fault, and was immaterial under the circumstances, amply support the conclusion of the court below that the tug was not negligent in these particulars. Furthermore, if, as contended, the city negligently caused the scows to be left in a dangerous position—a question to be discussed later—the master of the tug was amply justified, under the directions given, in endeavoring to remove all of them at once, as he did.

The question as to the negligence of the tug in not taking proper care of the scow after she had been injured was not discussed by the court below. But, in any event, we think the evidence fails to show negligence on the part of the master of the tug in this regard. During all the time that the Walter J. was lying against the upper end of the 132d Street Pier, her captain had an opportunity to examine her condition and the extent of her injuries, and to determine whether it would be dangerous to move her; and, inasmuch as he failed to notify the master of any objection to her removal, the tug cannot be held liable for the result of such failure. We concur, therefore, in the conclusion of the court below that the tug was free from fault.

The serious question in the case is as to the negligence of the city in leaving the scows in an exposed position at the 134th Street Pier. It appears that this pier has been used as a dump for the department of street cleaning for six years, that the scows had remained there in safety during the first half of the ebb tide, and that the captain of the Walter J. thought the scow was safe there, and told the master of the tug to leave him there; urging that there was too much ice to take the scow away. But, on the other hand, it appears that there is no pier above this one at 134th street to protect it; that the ebb tide sets directly in on this pier; that the scows were made fast on its upper side; that several scows have been hurt there and overturned by the ice; and that spiles under the dock have been carried away by the ice. No witness on the part of the city has testified that the berth was a safe and proper one at the time in question. On the contrary, it appears from the testimony of the witnesses for the libelants, confirmed, in large measure, by that of the witnesses for the respondent, that the dump at this pier has been closed on account of ice, and that the berth is a dangerous place in the winter time when ice is running. The District Court, in Bleakley v. City of New York, 139 Fed. 807, has found that this is so, and that accidents have oc-

curred there, causing injury to boats, "because the place having no protection from the north, and the ebb tide setting the ice on the pier, it is obviously not a place where boats can be left with any reasonable assurance that they will not be injured."

Under the well-settled law as laid down in the cases cited by the court below in its opinion, we think the city was liable as bailee for negligence.

The decree is affirmed, with interest and costs.