[No. 12229.  Department Two.  May 27, 1915.]

ALBERT E. PARKER, *Respondent*, v. WASHINGTON TUG & BARGE COMPANY, *Appellant*.[1]

APPEAL—REVIEW—WAIVER OF ERROR—NONSUIT. Error in the denial of a motion for nonsuit is waived, where defendant presents his evidence, and the case will thereafter be reviewed on appeal upon the entire testimony.

APPEAL AND ERROR—REVIEW—FINDINGS. Where there is substantial evidence to support the verdict, the finding of a jury upon a disputed question of fact will not be disturbed on appeal.

SHIPPING — CONTRACTS — TOWAGE OR CHARTER PARTY—INJURY TO VESSEL—LIABILITY. A contract of bailment for hire constituting a charter party, and not one of towage, is established by evidence showing that defendant was using its own tugs and barges to convey sand from plaintiff's sand plant to contractors at V. who, becoming urgent for sand, contracted with plaintiff for the use of his scow for a certain voyage, to be loaded by plaintiff and then towed by defendant, and that plaintiff had nothing to do with the towing of the scow, but that the use of his scow for the particular trip mentioned

[1]Reported in 148 Pac. 896.

was hired from him by the defendant; hence loss or damage to the scow is to be measured according to the law of bailment.

SAME — NEGLIGENCE — CHARTERER — BURDEN OF PROOF. Where a chartered scow broke away from her tow and was wrecked and was injured while in the exclusive possession of the bailee, the burden is upon it to show how the injury occurred and that it was free from negligence.

SHIPPING—INJURY TO SCOW — INSTRUCTIONS — REASONABLE CARE. In instructing the jury on the measure of defendant's duty while in possession of a scow as bailee, the use of the term "responsible" in place of "reasonable," as modifying "skill and care" was not prejudicial as tending to mislead the jury, where subsequently in the same instruction it was said that the exercise of "reasonable care and caution and maritime skill" was all that was required.

SHIPPING—INJURY TO SCOW—INSTRUCTIONS—LIABILITY. In an action for damages to a scow while bailed to defendant, where the evidence was conflicting as to whether plaintiff had authorized the defendant to employ another tugboat company to tow the scow with a gasoline tug of insufficient power, it was proper to instruct the jury that, if plaintiff knew nothing of the arrangement for the use of a gasoline tug and did not consent thereto, the defendant would be liable if the scow was damaged as claimed.

APPEAL—REVIEW — HARMLESS ERROR — INSTRUCTIONS. Refusal of requested instructions is not prejudicial when the instructions given correctly state the law applicable to the facts in the case.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered November 10, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages. Affirmed.

*James Kiefer*, for appellant.

*Wright, Kelleher & Caldwell* and *Robert H. Evans*, for respondent.

MAIN, J.—The purpose of this action was to recover damages sustained by a scow or barge while in the possession of the defendant. After the issues were framed, the cause was tried to the court and a jury. At the conclusion of the plaintiff's testimony, the defendant interposed a motion for a nonsuit, which was overruled. At the conclusion of all the evidence, the defendant challenged the sufficiency of the evidence

to sustain a verdict, and moved the court for a directed verdict. Neither the challenge to the evidence nor the motion for a directed verdict were sustained. The jury returned a verdict for the plaintiff in the sum of $1,512.15. The defendant interposed a motion for judgment notwithstanding the verdict, and in the alternative for a new trial, both of which were denied. A judgment was entered upon the verdict. The defendant appeals.

The facts, so far as necessary to an understanding of the questions to be noticed, are these: During the month of December, 1912, and for some time prior thereto, the respondent was the operator and owner of a sand plant at Eagle Harbor, in Kitsap county, Washington. The appellant was engaged in the business of towing barges and other craft upon Puget Sound and adjacent waters. During the summer and fall of the year 1912, the Anderson Construction Company had a contract for the construction of certain street paving in the city of Victoria, B. C. This company being unable to complete its contract, it was succeeded by the M. P. Cotton Company, Ltd., of Vancouver, B. C. After the contract was taken over by the Cotton company, one L. S. Wood, the secretary of the appellant company, at the request of the Cotton company, went to Victoria, and met M. P. Cotton of that company. At this time it was agreed between the Cotton company and the appellant that the former would pay 50 cents a yard for paving sand, and 50 cents a yard for towing the same from Eagle Harbor to Victoria.

After Wood returned from Victoria, he either went to see the respondent or had a talk with him over the 'phone. In any event, whatever the manner of the conversation, it was agreed that the respondent, Parker, would furnish the sand, f. o. b. Eagle Harbor, billed direct to the M. P. Cotton Company; that the appellant would deliver its own scows at the sand plant to be loaded, and when loaded would tow the same to Victoria. The respondent had no contract with the Cotton

19—85 WASH.

company, and never had any conversation with any representative of that company relative to this matter.

Some time early in the month of December, 1912, the Cotton company wired both the appellant and the respondent that, owing to the lack of sand, they had been compelled to shut down the work. These telegrams were urging an early delivery of the sand. At this time the defendant company, according to the testimony of Wood, "was very busy, the weather uncertain, stormy at times, scows were held up, and the defendant company hard pushed for scows enough to transact the business; and had telegrams and letters from Cotton urging for the sand, saying that they were shut down for want of it." The defendant company not being able to supply its own scows to be loaded at the sand plant, contracted with the respondent for the use of his scow called the "Big Sandy." The respondent was to load the scow with 250 yards of sand. After it was loaded, the appellant was to tow it to Victoria with its steam tug "Challenge," or some other of its tugs of equal capacity. For the use of the scow upon this trip the respondent was to be paid by the appellant one-third or one-fourth of the towage charge which he would collect from the Cotton Company; the exact amount is immaterial.

After this arrangement was made, the respondent loaded the "Big Sandy" with 250 yards of sand, and notified the appellant of this fact. At this time the tugs of the appellant company were all busy, and its tug "Challenge" would not be in for several days. The M. P. Cotton Company being very desirous of having the sand as soon as possible, and urging its immediate delivery, the appellant company contracted with the Elliott Bay Tug & Barge Company to tow with the gasoline launch "Monaghan" the "Big Sandy," together with a scow loaded with brick, to Victoria. The tug "Monaghan" was capable of developing 80 or 90 horse power. The steam tug "Challenge" had a horse power of 185. Up to this point, the facts are not in dispute.

Wood testified that he was authorized by the respondent to secure some other towing company to take the "Big Sandy" to Victoria. This the respondent denies, and he testified that he had no knowledge that the scow was to be towed by any other tug boat than the "Challenge."

On December 16, after taking in tow at Seattle a scow loaded with brick, the tug "Monaghan" proceeded across the sound to Eagle Harbor, arriving there at about 2 o'clock p. m. of that day. After fastening the hawser or tow line to the "Big Sandy," the tug proceeded on its way to Victoria. It left Eagle Harbor about 3:30 and arrived at Marrowstone Point or Flagler at 5:30 the next morning. Here it waited for a favorable tide, and departed from Flagler for Victoria at 10:30 o'clock on the morning of the 17th of December. While crossing the strait of Juan de Fuca, at about 3 o'clock in the afternoon, a high wind arose, and the sea became very rough. Some time later in the afternoon, while the storm was still prevailing, the "Big Sandy" broke her tow line. Owing to the roughness of the sea, it was impossible to again take the scow in tow. The tug with the scow loaded with brick proceeded towards Victoria, arriving there at about 6:30 o'clock in the evening.

Subsequently the "Big Sandy" was found upon a beach to which she had floated, and was towed into Victoria. Some days later the respondent was notified by Wood that the scow had been wrecked; and at another time, was further notified that it was at Ballard. A few days after this, the respondent was notified by the Ballard Marine Railway Company that the scow was afloat in the sound. Thereupon the plaintiff employed a tug to take the scow in tow and bring it to Eagle Harbor. The present action was brought for the purpose of recovering damages which the scow sustained. No complaint is made as to the amount of the verdict returned.

The appellant's brief contains twenty-seven assignments of error, and in the portion of the brief devoted to the argu-

ment, seventeen points are separately stated and argued. It is first claimed that the court erred in denying the appellant's motion for a nonsuit. As appears from the facts stated, the appellant did not stand upon its motion, but after the same was overruled, presented its evidence. Where a motion for a nonsuit is denied, and the appellant does not stand upon the motion, but presents its evidence, the case will thereafter be reviewed upon the entire testimony. By failure to stand upon the motion for a nonsuit, that motion is waived. *Ryan v. Lambert*, 49 Wash. 649, 96 Pac. 232.

Considering the case upon all the evidence, the appellant insists that its motion for a directed verdict should be sustained. One of the grounds of negligence charged in the complaint was the attempt to tow, with a gasoline tug of 80 horse power, the two scows across the strait of Juan de Fuca at the time of year mentioned, under the weather conditions then prevailing. The evidence introduced on behalf of the plaintiff tends to support the claim of negligence as stated in the complaint. The evidence introduced on behalf of the appellant tends to support its position that it at all times acted in accordance with what is termed "good seamanship," and exercised reasonable care and caution. The appellant's evidence tends also to support its claim that the barge was defective, and that the accident was brought about by this fact. This is contradicted by the respondent's evidence. The question whether or not the appellant in attempting to tow the two barges across the strait with the gasoline tug "Monaghan" was exercising reasonable care and skill was obviously a question of fact for the jury to determine. Upon this question the appellant in its brief states that the "respondent certainly failed to sustain the burden of proof requiring him to prove the negligent acts complained of in his complaint; and also to establish that the loss of his barge was occasioned by such negligent acts." It has become the settled law in this state that the finding of a jury upon a disputed question of fact, where there is substantial evidence

to support the verdict, will not be disturbed upon appeal. *Allard v. Northwestern Contract Co.*, 64 Wash. 14, 116 Pac. 457; *Druglis v. Northwestern Imp. Co.*, 41 Wash. 398, 83 Pac. 101; *Irwin v. Buffalo Pitts Co.*, 39 Wash. 346, 81 Pac. 849; *McKenzie v. North Coast Colliery Co.*, 55 Wash. 495, 104 Pac. 801, 28 L. R. A. (N. S.) 1244; *McKean v. Chappell*, 56 Wash. 690, 106 Pac. 184; *Sexsmith v. Brown*, 61 Wash. 164, 112 Pac. 337; *Critler v. Jacobson & Lindstrom*, 66 Wash. 322, 119 Pac. 819; *Fitzpatrick v. Newland*, 81 Wash. 401, 142 Pac. 867; *Woodard v. Cline Lumber Co.*, 81 Wash. 85, 142 Pac. 475.

The appellant's principal contention seems to be that the trial court erred in submitting the cause to the jury upon the theory that the appellant company was a bailee for hire of the scow "Big Sandy" when it was damaged. The appellant's position is that the contract between the appellant and the respondent relative to the "Big Sandy" was one of towage and not a contract of bailment. This contention cannot be sustained. The undisputed facts show that the appellant company contracted with the Cotton company to do the towing at 50 cents per yard, and the Cotton company would pay in addition 50 cents per yard for the sand; that the respondent contracted with the appellant to furnish the sand and load the same upon the appellant's scows; that the sand was to be billed f. o. b. Eagle Harbor; that because the appellant could not furnish scows when the Cotton company demanded the sand, the appellant contracted with the respondent for the use of his scow, the "Big Sandy," for a certain price; and that the respondent had nothing whatever to do with the towing of the scows loaded with sand to Victoria. These facts show not only that the respondent made no contract for towage, but that the appellant hired from him the use of the scow in question for the particular trip mentioned. Where a contract is made by which the owner of a ship or other vessel lets the whole or a part of her to another person for the conveyance of goods on a particu-

lar voyage in consideration of the payment of a sum men-
tioned, the contract is what is known as a charter party.
Bouvier's Law Dictionary; Hughes, Admiralty, p. 155.
Where a water craft is chartered and is not returned at all,
or returned in a damaged condition, the charterer's liability
will be resolved according to the law of bailment. In other
words, the charterer becomes a bailee. *The Three Brothers*,
145 Fed. 177; *Bleakley v. City of New York*, 139 Fed. 807.

In the *Three Brothers* case, the city of New York had hired
a scow which, while in its possession, was damaged by floating
ice in North river. By the circuit court of appeals for the
second circuit, it was there said:

"Under the well-settled law as laid down in the cases cited
by the court below in its opinion, we think the city was liable
as bailee for negligence."

As already stated in this case, the cause was submitted
to the jury as though the appellant had become a bailee of
the scow. It is not claimed that the instructions incorrectly
stated the measure of liability applying the law of bailment,
but it is claimed that the instructions are erroneous because
they submitted "the case upon the theory of a bailment.
This is not and never was the relation existing between tug
and tow. No maritime law can be found which will justify
these instructions." From this excerpt quoted from the ap-
pellant's brief, it would seem that its position is that, since
the action was based upon a maritime contract, it was neces-
sarily one for towage and not one of bailment. In the auth-
orities last above cited, the contracts there under considera-
tion were maritime contracts; and it was held that liability
should be measured according to the law of bailment.

In *Swenson v. Snare & Triest Co.*, 160 Fed. 459, the circuit
court of appeals for the second circuit, while considering
liability under a charter party, said:

"This was a libel *in personam* to recover damages for the
loss of a pile driver which occurred in the East river in July,
1905. It is admitted that the pile driver was chartered by

the respondent from the libelant and that while in the exclusive possession of the respondent, it sank and was lost. As such an occurrence is not in the ordinary course of things, the burden was thrown on the respondent as a bailee to show how the loss took place and that it was not caused by its negligence."

In *Terry & Tench Co. v. Merritt & Chapman Derrick & Wrecking Co.*, 168 Fed. 533, it was said:

"The vessel having been injured while in the exclusive possession of the respondent, as bailee, the burden is upon it to show: (1) How the injury occurred. (2) That it was free from negligence."

In the case of *The Genessee*, 138 Fed. 549, a vessel while in the custody of a tug was lost. It was there said:

"The case is a proper one for the application of the rule that a presumption of negligence arises against a bailee for hire when it appears that the subject of the bailment has been injured or destroyed while within his custody by an accident such as in the ordinary course of things does not happen when a bailee uses due care."

The rule of those cases, by which the liability of a bailee is to be measured, is substantially the same as the rule which has previously been adopted by this court. *Patterson v. Wenatchee Canning Co.*, 53 Wash. 155, 101 Pac. 721; *Kingsley v. Standard Lumber Co.*, 84 Wash. 189, 146 Pac. 369. Had the facts shown that the contract between the appellant and the respondent was one for towage and not one of bailment, then the numerous authorities cited by the appellant in its brief would be apposite. There are no facts in the case from which the jury might reasonably have inferred that the contract was one of towage rather than one of bailment, and therefore it was not error for the court not to submit the case upon this hypothesis.

The court while instructing the jury upon the measure of the appellant's duty, in one place used the term "responsible skill and care." Subsequently, in the same instruction, it was said that the exercise of "reasonable care and caution

and maritime skill" is all that is required. This instruction follows the language used in the case of *Berry v. Ross*, 94 Me. 270, 47 Atl. 512, where the same inadvertence relative to the use of the word "responsible" instead of "reasonable" appears as in the instruction given. While the use of the word "responsible" is not accurate, the jury could not have been misled by it, in view of the fact that immediately afterwards the word "reasonable" was used in the same connection.

One of the disputed points in the case was whether or not the respondent had authorized or consented that the appellant might employ another tugboat company to do the towing in question. Upon this question the jury was instructed that if the respondent knew nothing of the arrangement for the use of the gasoline tug "Monaghan" and did not consent thereto, in that event, if the barge was damaged as claimed, the appellant would be liable. This instruction finds support in the following authorities: 36 Cyc. 107; *Sutcliff v. Seligman*, 121 Fed. 803; *Beach v. Raritan & Delaware Bay R. R. Co.*, 37 N. Y. 457. The challenge to the correctness of the instruction is not supported by any authority.

Error is sought to be predicated upon the refusal of the court to give certain requested instructions. So far as these requests correctly state the law applicable to the facts in the particular case, they were covered by the instructions given. We find no error in this regard.

The points already considered appear to us to be the principal ones. To here review the remaining points argued in the brief would unduly prolong this opinion and serve no useful purpose. It may be said, however, that we have considered all of the points urged, and in none of them do we find substantial merit.

The judgment will be affirmed.

MORRIS, C. J., FULLERTON, ELLIS, and CROW, JJ., concur.