[No. 13284.   Department Two.   January 29, 1917.]

FARMERS STATE BANK, *Respondent*, v. M. C. GRAY, *Appellant*, HARRY GREY et al., *Defendants*.[1]

APPEAL—REVIEW—EVIDENCE—WAIVER OF NONSUIT.   Where defendant did not stand upon his challenge to the sufficiency of the evidence, but entered upon his case, it will be reviewed on appeal upon the entire evidence.

PRINCIPAL AND SURETY—CONSIDERATION.   The consideration for a promissory note which moves to the principal is sufficient to sustain the obligation against a surety on the note.

SAME — RELEASE OF SURETY — DEALING WITH COLLATERAL.   The surety upon a promissory note is not released because of improper dealings with securities, which were merely placed in the possession of the cashier of the payee in trust for the purpose of realizing upon them, upon the understanding that they would be returned if they were not realized on, which was done.

SAME—RELEASE OF SURETY—COLLATERAL—PREVENTING ACTION TO COMPEL APPLICATION.   A surety on a promissory note is not released by the assurance of the attorney for the holder that the note would be paid, whereby he failed to bring an action to compel the application of the collateral, where the assurance was contingent upon realizing upon the collateral, and the condition was not fulfilled; especially where the attorney did not appear to have possession of the notes or authority to make the assurance.

[1]Reported in 162 Pac. 531.

Appeal from a judgment of the superior court for Whitman county, McCroskey, J., entered May 14, 1915, upon the verdict of a jury rendered in favor of the plaintiff, in an action on promissory notes. Affirmed.

*E. B. Quackenbush*, for appellant.

*M. S. Jamar* and *H. J. Welty*, for respondent.

MAIN, J.—The purpose of this action was to recover upon two promissory notes.

The defendants were Harry Grey and wife, and M. C. Gray and wife. Judgment went against Harry Grey and wife by default. The jury returned a verdict against M. C. Gray, but in favor of Cora E. Gray, his wife. From the judgment entered upon this verdict, M. C. Gray appeals. One of the notes was in words and figures as follows:

"Pullman, Wash., Oct. 22nd. 1913.
($1,500
(No. 1659

"On the 22nd day of December, 1913, for value received, I promise to pay to the order of the Farmers State Bank at Farmers State Bank, Pullman, Washington, Fifteen Hundred Dollars with interest from date until paid, at the rate of 8 per cent per annum, payable annually.

"The makers, signers and endorsers of this note agree to an extension of same from time to time, until fully paid, waiving demand, protest or notice of protest. It is also agreed that any collateral of any kind or description whatever, which is now or may be held hereafter by said payee shall be held as security on this note as well as any demands against any of the makers, signers or endorsers of this note, due or not due. And if not paid at maturity, both interest and principal shall become immediately due and collectible at the option of the holder of this note.          Harry Grey
"P. O.. . . . . . . . . .          M. C. Gray"

The other note only differed from this one in the date, time when due, and the amount. Upon the trial, the respondent introduced in evidence the two notes and rested. The appellant thereupon moved for a directed verdict. This motion

was denied. The basis for this motion was the claim that the notes were nonnegotiable, and therefore their mere introduction in evidence without proof of a consideration did not make a *prima facie* case. It is claimed that that provision of the note relating to the manner in which the payee might use any collateral that was deposited to support the notes, renders them nonnegotiable. It will be here assumed, but not decided, that the notes were nonnegotiable. It will also be assumed that a nonnegotiable note which recites that it was given for "value received" does not, *prima facie*, establish that it was given for a consideration, but that a consideration must be proven before a cause of action is established.

At the conclusion of the respondent's case in chief, there was no proof of consideration. The appellant, however, did not stand upon his motion. At the conclusion of all the evidence, there was proof that the consideration for the notes was a loan to Harry Grey. The appellant not having stood upon his motion, the case will thereafter be reviewed upon the entire testimony. *Ryan v. Lambert*, 49 Wash. 649, 96 Pac. 232; *Parker v. Washington Tug & Barge Co.*, 85 Wash. 575, 148 Pac. 896.

It is contended that, if the notes are nonnegotiable, M. C. Gray was only a surety, and that the evidence not showing that he received any of the consideration, an action as to him must fail; but the rule is, in case of a surety, that the consideration which moves to the principal is sufficient to sustain the obligation of the surety. Pingrey, Suretyship and Guaranty (2d ed.), § 35; Brandt, Suretyship and Guaranty (3d ed.), § 2.

The appellant seeks to avoid liability on the notes, because, as he claims, (a) the respondent, through its cashier, entered into a conspiracy relative to certain collateral, which was detrimental to his interests; (b) the attorney for the bank assured him that the notes would be paid out of the proceeds of collateral mentioned, on a day certain, and relying upon this assurance, he did not institute an action for

the purpose of requiring that the collateral, or the pro-
ceeds thereof, be applied upon the notes; and (c) the at-
torney for the bank assured him that the notes would be
paid.  The facts which gave rise to this contention may be
summarized as follows:

Harry Grey, some time prior to the transaction here in
controversy, transferred to one Charles M. Chamberlain cer-
tain notes and mortgages, referred to in the evidence as se-
curities, to the amount of approximately sixteen thousand
dollars.  Chamberlain, after receiving these, hypothecated
them with a bank in Spokane.  M. S. Jamar was the at-
torney for Harry Grey, and also one of the attorneys for
the respondent in this action.  After the securities had been
transferred to Chamberlain, Grey took the position that he
had been overreached, and Chamberlain agreed that, if Grey
would pay something like four thousand dollars to the bank
in which the securities were deposited, he would return them
to him.  Among the securities was a note for nine thousand
two hundred dollars, secured by a mortgage upon a section
or more of land in Alberta, Canada.  This note was the obli-
gation of one S. L. Lee, who resided in Canada.  Chamber-
lain being willing to return the securities if the sum men-
tioned was paid to him, he turned them over to the cashier
of the respondent bank, who, with one or two others, went
to Canada for the purpose of seeing Lee and realizing upon
the note and mortgage, the thought being to secure enough
money from Lee to pay the demand of Chamberlain, and
also sufficient to meet Harry Grey's obligation to the re-
spondent bank.  When the parties reached Canada and in-
terviewed Lee, they were immediately told by him that he re-
pudiated the obligation and already had instituted an action
for the purpose of cancelling the note and mortgage, be-
cause they had been secured from him by fraud.  The parties
returned to the state of Washington, and the note and mort-
gage, together with the other securities, were returned to
Chamberlain.

The appellant claims that he is released from his obligation upon the notes in this action because of the manner in which the collateral received from Chamberlain was dealt with. This contention is without substantial merit, and was properly by the trial court withdrawn from the consideration of the jury. The collateral was in the possession of the cashier of the respondent in trust for the purpose specified, with the promise that if it were not realized upon it should be returned. We find no evidence of a conspiracy to defeat the rights of M. C. Gray. Neither was the appellant prejudiced by reason of the fact that he failed to bring an action, relying upon the assurance of the respondent's attorney that the notes would be paid. The conversation in which this assurance is asserted to have been given was while the cashier of the bank was in Canada, and was to the effect that, if the securities were realized upon, the notes held by the bank against Harry Grey and M. C. Gray, which are the basis of this action, would be paid. Nothing was received upon the notes, and it was only upon this contingency that the assurance was given. There is also some contention that the attorney for the bank in this action stated that the notes would be paid in any event. If such a statement were made, it was undoubtedly not made in his capacity as attorney for the bank, but in his capacity as attorney for Harry Grey. It may well be doubted whether Jamar, at the time the conversation is alleged to have taken place, was the attorney for the bank as far as concerns the notes here involved. He did not then have possession of the notes, and had not been employed for the purpose of instituting an action upon them.

The judgment will be affirmed.

MORRIS, PARKER, and HOLCOMB, JJ., concur.