[No. 16043. Department Two. February 3, 1921.]

A. WORTHY et al., Respondents, v. ARCTIC COMPANY, Appellant.[1]

WAREHOUSEMEN (7)—INJURY TO GOODS—DETERIORATION OF MEAT—EVIDENCE—ADMISSIBILITY. Upon an issue as to the tainted and unfit condition of meat held in cold storage by defendant, it is admissible to show its unfit condition although still frozen in the center after being transported some distance in express and not refrigerator cars, the weight of such evidence being for the jury.

SAME (7)—SUFFICIENCY. Whether a warehouse properly cared for cold storage meat is a question for the jury, where there was evidence as to its unfit condition when it was examined and tested as it was found in the warehouse.

APPEAL (142)—PRESERVATION OF GROUNDS—EXCEPTIONS TO INSTRUCTIONS. Error cannot be predicated upon instructions as to the measure of damages where no exceptions were taken.

SAME (437)—REVIEW—HARMLESS ERROR—OBJECTIONS TO ANSWERS. Error cannot be predicated upon not withdrawing affirmative defenses where the matter was provable upon a general denial.

SAME (106) — RIGHT TO ALLEGE ERROR — WAIVER BY STIPULATION. Error cannot be predicated upon not withdrawing from the jury matter which was by stipulation submitted to and decided by the court.

[1]Reported in 195 Pac. 222.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered January 30, 1920, upon the verdict of a jury rendered in favor of plaintiffs, in an action for damages. Affirmed.

*Gram, Hull & Barrett* and *Fred B. Morrill*, for appellant.

*Luby & Pearson*, for respondents.

MITCHELL, J.—This is an action to recover damages alleged to have been caused by the negligence of the defendant, the Arctic Company, a corporation, in allowing meat placed in its custody for cold storage to thaw out, become soiled, contaminated, infected and subjected to ammonia fumes, so as to spoil it and render it unmarketable. A trial resulted in a verdict and judgment for the plaintiffs, from which the defendant has appealed.

Respondents were engaged in the wholesale and retail meat business at Ione, one hundred and seventeen miles from Spokane, at which latter place was located the cold storage warehouse of the appellant. An agreement was entered into by which, in the month of November, 1918, the respondents delivered in good condition 31,764 pounds of fresh beef to the appellant to be frozen and kept so, for an agreed compensation. Thereafter respondents ordered and received shipments of the meat from time to time as needed from January 20, 1919, until May 20, 1919, when, as they claim, the meat had become so spoiled and unmarketable they declined to receive any more of it. There remained on hand with the appellant 5,644 pounds, as originally weighed, that was wholly unmarketable and lost to respondents, as they claim, to their damage in the sum of one thousand dollars.

The proof shows that cold storage meat may be kept in good condition for a period of one to two years.

In the months of April and May, 1919, respondents' retail customers made serious objections to the meat, and some of them quit buying several weeks prior to May 20, 1919. A number of witnesses testified that the meat had a strong smell, foreign to ordinary cold storage meat. It was testified to that the room in which it was stored had an odor different from that in other cold storage rooms of the same warehouse. A witness of seven years' experience in the fresh meat business took six samples of this meat from the appellant's storage room and cooked it. He found the fat had a very bad taste; not desirable to eat; it had a strong, oily taste, similar to bear meat. He further stated the only reason he could give for its condition was variation of temperature, allowed to thaw a little bit and then freeze up again; and that several times when in the room in which the meat was stored he did not think the room was cold enough. He further stated that the room was not clean.

Another witness of twenty years' experience in the meat business, who had been a butcher for eleven years and who had handled frozen beef, examined this at the warehouse and found it in poor condition. He cut off a piece and tested it. It seemed like ammonia had gotten into it, that was the odor it had. It was rancid. He did not consider the room in a very sanitary condition. The floor was not clean. He further testified he had handled meat affected with ammonia and this seemed to be that way. Other witnesses who examined it about May, 1919, testified similarly, some of whom noticed the smell of ammonia in the storage room or another room separated by an open doorway. Another customer of the appellant who had put thirty-five head of slaughtered beef in storage in the same room in October, 1918, found its meat in about the same condition from the 1st of May, 1919, as that of

the respondents. All of the fat had to be cut away as spoiled. It had a taint, a foreign flavor.

The evidence shows that respondents would order meat which would be sent out by express the next morning, getting to Ione about noon. It was wrapped in burlap for the purpose of shipment. Upon receiving it at Ione, it was kept in an ice box prepared for that purpose wherein the meat was allowed to thaw gradually. The proof shows that to be the proper way to handle cold storage meat and that, if so handled, it will keep satisfactorily for a week or ten days.

Respondents' proof shows that, while selling the meat at Ione, they handled none other, and that they disposed of each shipment within a few days after receiving it. A number of their retail customers at Ione who made purchases of the meat in April and May, 1919, testified, over the objections of appellant, that the meat was tainted, smelled bad, and that it was not fit to eat. That they could not eat it after it was cooked, and that the meat, as they purchased it, was still frozen in the center. This testimony was claimed to be immaterial for the reasons that the appellant was to make delivery at Spokane rather than at Ione, and because the meat was transported, at the instance of respondents, by express and not refrigerator cars. But we are satisfied that, under the circumstances delineated and explained by the evidence, and considering the condition of the meat as to its temperature at the time it was received by the witnesses, the testimony was properly admitted—its weight being for the jury.

After respondents had rested their case, counsel for appellant moved for a directed verdict, which it is claimed should not have been denied. This assignment is presented from two angles; (a) that the testimony is insufficient to show the meat had become dam-

aged by reason of the negligence of the appellant; and (b) that there was no proper evidence showing the amount of damages so that the jury could reasonably assess the same.

As to the first, reliance is had upon that portion of the case of *Patterson v. Wenatchee Canning Co.,* 53 Wash. 155, 101 Pac. 721, which discusses the law of a *prima facie* case of negligence where merchandise is delivered to a bailee for hire, in good condition, and a re-delivery is not made, or upon the re-delivery the goods are found to be damaged, according to whether the property is perishable or not; and in connection with it the assertion made by the court that it is within the common understanding of all men that meat will spoil and become damaged through internal defects or the operation of natural causes. But that case is no precedent for determining this one wherein there is evidence of examining and testing the condition of the article as it was found in the warehouse, from which the jury were at liberty to say there was deterioration and that it proceeded from abnormal causes rather than internal defects or the operation of natural influences.

As to the second feature of this assignment, the contention is that May, 1919, when respondents declined to take any further delivery of the meat, was an improper date to be considered in ascertaining and fixing the amount of damages respondents were entitled to recover; as well also the amount of damages actually found by the jury. The trial court's instruction upon this feature was clear and explicit. No exception was taken to the instruction and appellant is therefore precluded by the rule and measure thereby established. *Sexsmith v. Brown,* 61 Wash. 164, 112 Pac. 337; *Fogarty v. Northern Pac. R. Co.,* 85 Wash. 90, 147 Pac. 652; *Peters v. Union Gap Irr. Dist.,* 98 Wash.

412, 167 Pac. 1085. The amount awarded by the jury ($507.96) is well covered by the proof.

Another assignment of error is that the court should not have withdrawn from the consideration of the jury affirmative defenses contained in the answer. A consideration of the affirmative matter shows that, with one exception, the facts alleged were provable under a general denial. The exception related to the proceeds of a sale of the meat, made upon an order of court procured by the appellant, less its warehouse charges and reasonable expenses in making the sale, all of which occurred after the commencement of this action. This portion of the controversy, however, by stipulation entered into by the parties while the jury trial was going on, was taken from the consideration of the jury and subsequently decided by the court.

Nor did the court err in denying appellant's motion for a judgment notwithstanding the verdict. Without going into details, it may be stated there was strong, substantial testimony that appellant was free from negligence in its treatment and care of the meat. Thus it is manifest that there was substantial evidence on both sides of the question, and therefore the determination of it was for the jury.

Assignments of error in denying the motion for a new trial and in entering judgment upon the verdict are supported by no distinctive argument of the appellant, and require no further consideration here.

Judgment affirmed.

MAIN, MOUNT, HOLCOMB, and TOLMAN, JJ., concur.