[No. 18702.  Department Two.  November 21, 1924.]

THE GLACIER FISH COMPANY, INCORPORATED, *Respondent*, v. NORTH PACIFIC SEA PRODUCTS COMPANY, *Appellant*.[1]

WAREHOUSEMEN (7) — COLD STORAGE — NEGLIGENCE — EVIDENCE — SUFFICIENCY. Findings that the temperature of fish, held in cold storage, was allowed to rise above the freezing point, causing decay and loss, is sustained by proof that they were in good condition in the middle of the summer, and decayed in November, and if properly stored would have kept several years.

SAME (4) — NEGLIGENCE — INJURY TO GOODS — DAMAGES. In an action for the negligent loss of fish held in cold storage, an allowance of five cents per pound as the market value, is excessive, where the testimony was confused and unsatisfactory and three and one-half cents was the amount claimed for a time, and for which they were billed to defendant after their destruction.

Appeal from a judgment of the superior court for Pierce county, Askren, J., entered July 25, 1923, upon findings in favor of the plaintiff, in an action for damages to property placed in cold storage, tried to the court. Modified.

*Bronson, Robinson & Jones*, for appellant.

*Robert M. Davis* and *Raymond J. McMillan*, for respondent.

MACKINTOSH, J.—The trial court found that the appellant and its predecessor in interest owned and operated a cold storage warehouse at Tacoma, Washington, and that the respondent, between March 6, 1917, and April 15 of the same year, placed in storage in the appellant's warehouse 108,915 pounds of frozen smelt, which at that time were properly packed and in first class condition, and that between April 26, 1917, and April 16, 1918, the respondent withdrew all but 69,100 pounds of the smelt. Upon an examina-

[1]Reported in 230 Pac. 410.

tion during the summer of 1918, the smelt remaining in storage were found to be in good condition and properly cared for, but "that sometime in the period between the summer and the latter part of November, 1918 . . . the defendant . . . carelessly and negligently allowed the temperature of the room in which said fish were stored to rise to such a point that the fish were permitted to thaw out and become unfit for food purposes;" that, upon the discovery by the respondent of the condition of the fish in the latter part of November, 1918, the respondent refused to accept them, whereupon they were destroyed by the health authorities; that the fish were of such quality that, if properly frozen and stored and kept at a low degree of temperature, they would remain for a period of more than two years without serious deterioration; that, at the time the fish were placed in storage in the appellant's warehouse, they were properly packed, frozen and stored, and that, by the exercise of ordinary and reasonable care on the part of the appellant, they would have remained in first-class condition without deterioration for more than two years from the time of their original storage; that, notwithstanding the fact that appellant could have kept the fish in perfect condition by exercising ordinary and reasonable care, it was negligent in the operation, care and control of the warehouse in this, "that it negligently allowed the temperature of the room in which said smelt were stored to rise to such a point, and for such a length of time, that the smelt thawed out and were negligently allowed to spoil, mold, deteriorate and decay, by which they were rendered totally unfit for food;" that the reasonable value of the fish at the time they were found to be spoiled was five cents per pound, or a total of $3,455; that the

reasonable value of the storage was $495.21. Following these findings, judgment was entered in the sum of $2,959.79, from which this appeal is taken.

The first point urged is that the respondent's action should have been dismissed, for the reason that there was an entire failure of proof of the negligence alleged in the complaint. The complaint charges as a ground of negligence that the temperature of the room in which the smelt was stored was allowed to rise so that the smelt became thawed and thereby spoiled. It is earnestly contended that the testimony does not show this situation to have existed. While there is no direct testimony by anyone who was present in the room when the temperature rose above the freezing point, still this condition must have occurred sometime between the middle of summer when the fish were found to be in perfect condition, and the date in November when they were found to be decayed; for the testimony shows that, at the latter date, the situation in the room was such as could have arisen only had there been a thaw. This proof was amply sufficient to sustain the allegation of the complaint, and after our reading of the testimony, we have no inclination to dissent from the trial court's findings to that effect.

Considerable argument is indulged in based upon the decision of this court in *Patterson v. Wenatchee Canning Co.,* 53 Wash. 155, 101 Pac. 721, which is answered by the citation of subsequent cases: *Smith v. Diamond Ice & Storage Co.,* 65 Wash. 576, 118 Pac. 646, 38 L. R. A. (N. S.) 994; *Perry Brothers v. Diamond Ice & Storage Co.,* 92 Wash. 105, 158 Pac. 1008, Ann. Cas. 1918C 891; and *Worthy v. Arctic Co.,* 114 Wash. 435, 195 Pac. 222, which it is contended modify, if they do not overrule, *Patterson v. Wenatchee Canning Co., supra.* It is unnecessary, as we view the facts of the

case, to pursue this discussion, for the reason that this case, to our minds, does not present one where a bailor is relying upon a *prima facie* case of negligence established merely by evidence of his delivery to the bailee of a bailment in good condition and a re-delivery in a damaged condition, for, as we have already noted, the respondent produced positive testimony of a specific act of negligence and is not relegated to a *prima facie* showing.

It is next argued that the respondent was not entitled to a judgment for the reason that the evidence establishes that, during the time in which the fish was spoiled, it was being held in storage at the risk of the respondent. The trial court found against this contention and (the evidence not preponderating against that finding) we must follow it.

The last point urged which we will notice is that the recovery allowed is too large, and in this contention we are in agreement with the appellant. The evidence as to the market value of the fish at the time of its damage is confused and unsatisfactory. Without detailing it, it is sufficient to say that we are satisfied therefrom that the court should have allowed no higher price than three and a half cents per pound, the amount at which the respondent billed the fish to the appellant after their destruction, and the amount which it sought for a considerable time to collect before beginning this suit.

The judgment of the trial court is modified to allow a recovery for the 69,100 pounds at three and a half cents per pound, or a total of $2,418.50, from which will be deducted the reasonable storage charges of $495.21, leaving a balance which will be the amount of the judgment; $1,923.29.

MAIN, C. J., BRIDGES, FULLERTON, and HOLCOMB, JJ., concur.