[No. 7447.    Decided May 13, 1909.]

FRED N. PATTERSON, *Respondent*, v. WENATCHEE CANNING COMPANY, *Appellant*.[1]

WAREHOUSEMEN—BAILMENT—CONSTRUCTION OF CONTRACT—TRIAL—QUESTION OF LAW. Under an agreement reciting that the defendant rented to the plaintiff a certain cold storage room to be used for storing beef, for a certain sum per month or in proportion to space used, the relationship of the parties is that of bailor and bailee, and is to be determined by the court as a matter of law; and it is misleading and error to submit to the jury the question whether the relation was that of landlord or warehouseman, although such relations were properly defined.

WAREHOUSEMEN—BAILMENT—LIABILITIES—PRESUMPTION OF NEGLIGENCE. In an action against a cold storage company for negligence in the storage of beef, there is no presumption of negligence from the fact that the beef was received in good condition and had spoiled when delivery was made; since from the nature of the chattel it may deteriorate or perish without negligence on the part of the bailee.

SAME—DAMAGES—MEASURE—INJURY TO PROPERTY. The measure of damages for negligence by a bailee for hire in the storage of beef is to be determined by the fair market value of the beef at the time it was sold when the bailment ended, and not at the time at which plaintiff intended to sell it.

Appeal from a judgment of the superior court for Chelan county, Steiner, J., entered November 16, 1907, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Reversed.

*Corbin, Ludington & Kemp* and *Williams & Grimshaw*, for appellant.

*Reeves & Reeves*, for respondent.

MORRIS, J.—In this action the plaintiff and respondent sought to recover from the defendant and appellant damages for alleged negligence in the storage of meat. The case was tried before a jury, and verdict was returned for respondent.

[1]Reported in 101 Pac. 721.

Many errors are assigned and discussed in the briefs, but we shall review only those involved in the conclusion reached.

The relation of the parties grew out of the following agreement:

"Wenatchee, Wash., Oct. 30, 1906.

"Agreement entered into between the Wenatchee Canning Co. and Fred N. Patterson, said Canning Co. renting to Mr. Patterson cold storage room No. 3 to be used for storing beef. Consideration $100 per month or in proportion to that amount according to space used. Rental to commence Monday, Nov. 5, 1906.

"Wenatchee Canning Co.   Per L. G. Olds."

The trial judge, being unable to satisfy his mind what the true relation of the parties was under this so-called. agreement—whether it was that of landlord and tenant or warehouseman and depositor, or both—left the question to the jury, giving them what he deemed appropriate instructions to cover each situation. Instruction No. 16 was as follows:

"Was the defendant company a warehouseman of the beef in controversy and the plaintiff Patterson a depositor of said beef for safe keeping, or on the other hand, did the relation of landlord and tenant merely exist between the parties. That is, was it merely contemplated by the parties when they contracted with each other that the defendant company should merely lease cold storage room No. 3 to the plaintiff Patterson, the same to be occupied and used by him for the storage of beef in his own way, and under his own control and at his own risk. Or, is it the fact that both of the foregoing relations existed between the parties; that is, did the defendant company lease cold storage room No. 3 to the plaintiff Patterson for the storage of beef and, in addition thereto, receive the beef into its custody and undertake the management and control of the same with a view to its preservation or safe keeping? Or, lastly, did the parties enter into a special contract, either orally or in writing, or both, whereby the duties and liabilities of each toward the other was specifically set forth and defined?"

In instruction No. 22 the jury were told that both relations might exist at the same time; the relation might be landlord

and tenant as to room No. 3, and the company still be a warehouseman as to the beef. If the learned trial court, familiar with the various legal situations created and growing out of contractual relations, could not satisfactorily determine what was the true legal situation existing between the parties to this action, it is difficult to see how twelve ordinary jurors could. It was not proper for the court to submit these questions to the jury even upon instructions correctly defining the respective duties of the parties in these varied and different relations. The court should have determined as a matter of law what this relationship was, and then have defined it to the jury with the correct principles of law appertaining to it, leaving to the jury only the questions of fact to be determined from the conflicting evidence. Instructions should be positive and direct as to the law under which the jury are to return their verdict. The record discloses what the verdict was, but it does not, nor could it, disclose whether the damages assessed against the respondent were because of what the jury conceived to be its liability as a landlord, or as a warehouseman, or as a landlord as to room No. 3, and a warehouseman as to the beef, or whether it was made up of what was determined to be in part a liability in one situation and in part a liability as to the other. We cannot escape the conclusion that this was misleading and confusing to the jury. The relation between the parties was that of bailor and bailee, and the only law upon which it was proper to instruct the jury was the law determining the respective duties and liabilities created by such a relationship.

In instruction No. 32 the court told the jury that,

"If the beef in question was delivered to the defendant for storage and safe keeping, and the defendant received it as warehouseman, and the beef was in good condition when it was deposited, and afterwards became spoiled while in the possession of the defendant, and before redelivery to the plaintiff, then the presumption is that the beef was spoiled through the negligence of the defendant, unless it introduces evidence from which it may be fairly inferred that the spoil-

ing of the beef was not due to the breach of any duty of the defendant, in which case the burden of proof is upon the plaintiff to establish by a fair preponderance of the evidence that the beef was spoiled on account of the negligence of the defendant."

This was not a correct statement of the rule under the given facts. While it is undoubtedly the law that where merchandise, not perishable in its nature, is delivered to a bailee for hire, in good condition, and a redelivery is not made, or upon a redelivery the goods are found damaged, a *prima facie* case of negligence is made out; yet, like many other doctrines of the law, such a principle has its limitation, and the limitation is that the subject of the bailment be of such a nature that loss or injury could not ordinarily have occurred without negligence on the part of the bailee. To come within this rule the chattel should be of such a nature that it would not deteriorate or perish from internal defects, or through the operation of natural causes: (Schouler, Bailments and Carriers, 1905 ed., §§ 12, 80) or the defect be not the result of ordinary wear and tear: (*Wintringham v. Wood*, 144 N. Y. 1, 38 N. E. 999, 43 Am. St. 725.) When a situation is shown which could not have been produced except by the operation of abnormal causes, the *onus* rests upon the bailee to show that the injury was caused without his fault. *Holt Ice & Cold Storage Co. v. Jordan Co.*, 25 Ind. App. 314, 57 N. E. 575; *Leidy v. Quaker City Cold Storage Co.*, 180 Pa. St. 323, 36 Atl. 851.

It is within the common knowledge of all men that meat in storage will spoil, will become damaged through internal defects, or through the operation of natural causes. So that even though the meat in this case, when brought to the respondent's warehouse, was in first class condition, and the jury so believed, the loss and damage complained of might have occurred to some extent, at least, without negligence on the part of the bailee, and the instruction as given, not recognizing this fact nor providing for any qualification, was, in

our opinion, error. Exception was duly taken to the giving of these instructions, and in addition the respondent requested the following instruction to be given:

"Where perishable goods are damaged while in cold storage, I charge you that negligence cannot be assumed and presumed from the mere fact of the damage, but the negligent acts or omissions causing the damages must be affirmatively proven."

It follows from what we have said in connection with instruction No. 32, that the above requested instruction, or one of like import, should have been given, and its refusal, duly excepted to, was error.

The jury were also instructed that, in determining the damages, they should find the fair market value of the meat at the time at which plaintiff intended to sell the same, not later than March, 1907. This, we believe, was erroneous. The time should have been the date when the damaged meat was sold. It does not clearly appear from the evidence when that date was, but it could not have been later than February 18, at which time the bailment ended. Respondent's liability could not be extended beyond the termination of the bailment. For the same reason the testimony of the witness Bloom should have been confined to the same dates.

We find no error in the admission of the tags in evidence; nor in the testimony of the witness Davis.

The judgment is reversed, and the cause remanded for a new trial.

ALL CONCUR.