[No. 17372.   Department One.   November 21, 1922.]

# M. E. HARLAND, *Respondent*, v. PE ELL STATE BANK, *Appellant*.[1]

ASSIGNMENTS (29)—ACTIONS—FOR PURPOSE OF COLLECTION.   In an action upon assigned bonds "assigned for suit and collection," the defendant cannot show as a defense that the bonds were not "assignable."

BAILMENT (8)—WAREHOUSEMEN (4)—LOSS OF GOODS—NEGLIGENCE —EVIDENCE—SUFFICIENCY.   Where a bank cashier left open the outer and stronger door of its safety deposit vault, and burglars gained entrance and stole securities by blowing open other doors and the safe, the bank is liable for the loss of securities held under bailment for hire; since its want of due care prior to the loss permitted or contributed to the loss, notwithstanding the claim that the burglars showed ability to make the entrance even if the outer doors had not been left open.

BAILMENT (8)—GRATUITOUS BAILMENT—CARE OF PROPERTY—EVI-DENCE—SUFFICIENCY.   A bank is not liable for the loss by burglary of bonds as to which it was a gratuitous bailee, which were kept in the safe where similar property of the bank was kept and it was the safest place in the bank. ·

Cross-appeals from a judgment of the superior court for Lewis county, Abel, J., entered March 2, 1922, upon findings favorable to the plaintiff, in an action to recover the value of property stolen from a bailee, tried to the court.   Affirmed.

*E. S. Snelling, John T. Welsh, Guy B. Groff*, and *William Hatch Davis*, for appellant.

*W. W. Langhorne*, for respondent.

MITCHELL, J.—The Pe Ell State Bank in conducting its business was provided with a vault containing safety deposit boxes for hire, and also a safe kept in its banking room outside of the vault.   The entrance to the vault consisted of two thin steel doors, the outer

[1]Reported in 210 Pac. 681.

one being thicker and stronger than the inner one. The inside door of the vault fastened with lock and key, the outer one locked with bolts inside. The safe was of medium size, having a thick fire-proof door. The inside of it consisted of pigeonholes and a so-called burglar proof steel chest fastened with a combination lock. The bank had received certain United States liberty bonds and war savings stamps, the property of Leander Crosette and Albert Meade, that were kept in safety deposit boxes, the rentals for which were paid by them. It had also received certain United States liberty bonds, the property of M. E. Harland, Gus Papas and Ward Carper, that were kept in the bank's safe, without compensation.

At the close of work one day, the cashier of the bank, who had the active personal management of it, left the banking room without locking or fastening the outer door of the vault. That night the bank was burglarized. The outer door of the vault was opened, uninjured, and the inner door was blown open. The outer door of the safe was blown off and the combination lock of the steel money chest in the safe was blown off, without that door being opened. The contents of the chest were not disturbed. The bonds and stamps of the parties mentioned, together with similar instruments and securities belonging to other persons, including the bank, were carried away and have not been recovered. This action followed, in which Harland, in his original right as to his bonds and as assignee of Crosette, Meade, Papas and Carper, sued the bank to recover the value of the bonds and stamps, together with interest. Findings of facts, conclusions and judgment were entered in favor of the plaintiff for the bonds and stamps taken from the vault, but against him as to those taken from the safe. Each

party has appealed from that portion of the judgment against him.

We consider the bank's appeal first. Noticing the terms of the written assignments to the plaintiff by Crosette and Meade, the bank contends that the bonds and stamps were attempted to be assigned, and that they could not be assigned or transferred according to the terms of an act of Congress and administrative regulations thereunder of the secretary of the treasury of the United States. Upon oral argument the point was waived as affecting the bonds. However, as to both, a fair understanding of the words of the assignments sustains the findings of the trial court that they were made for "suit and collection." We have no doubt the bank is fully protected, the beneficial owners, respectively, having testified at the trial in support of the assigned causes of action.

The principal contention on the appeal arises over the findings and conclusions on the merits. It fairly appears from all the testimony that the door to the safe was a greater obstacle to the success of a burglar than the inner door of the vault, and than the outer door of the vault would have been had it been locked. Therefrom it is heartily insisted by the bank that, if the outer door of the vault had been locked it would have afforded no efficient protection against the burglar, and that, therefore, the failure of the bank to lock the outer door of the vault did not constitute negligence for which it is liable for the theft of the securities taken from the vault. If so, then had the bank carelessly left both doors of the vault unlocked, or wide open, the loss of the valuables therein at the hands of the burglar would have created no liability against the bank, because the burglar had demonstrated his superior ability by blowing off the door to the safe. The rule would apply in the case of a score

of safes and vaults at the same place, the doors of all but the strongest left open, if a burglar succeeded in opening the strongest one of the lot. The contention is faulty. The proper rule is, did the act of the bank in leaving the vault door unlocked constitute want of due care, such as a prudent man would take under similar circumstances of his own property, that caused or permitted, or contributed to cause or permit, the burglary.

In the case of *Memphis & Charleston R. Co. v. Reeves,* 10 Wall. (U. S.) 176, 19 L. Ed. 909, the court said:

"It is not necessary for him (the bailee) to prove that the cause was such as releases him, and then to prove affirmatively that he did not *contribute* to it. If, after he has excused himself by showing the presence of the overpowering cause, it is charged that his negligence contributed to the loss, the proof of this must come from those who assert or rely on it."

In the case of *Hunter v. Ricke Bros.,* 127 Iowa 108, 102 N. W. 826, it was said:

"And when the presumption which obtains contemporaneous with the injury or loss, and which, as in this case, is solely relied upon in chief, is overcome by a showing that such injury or loss occurred through the operation of forces not within the control of the bailee, the case must be at an end, unless he who complains shall go farther, and either disprove the asserted cause of loss, or make it appear that a want of ordinary care on the part of the bailee co-operated with such destroying cause." (Citing cases.)

Van Zile, Bailments (2d ed.), concludes § 204, devoted to "the question summed up and the rule settled," by quoting from *Claflin v. Meyer,* 75 N. Y. 260, so often cited by this and other courts, as follows:

"Applying these principles to the present case, we must hold that, when it appeared, as it did, that the goods were taken from the defendant's warehouse by

a burglarious entry thereof, the plaintiffs should have shown that some negligence or want of care, such as a prudent man would take under similar circumstances of his own property, caused or permitted or contributed to cause or permit that burglary."

The cases and authority cited are in harmony with our case of *Firestone Tire & Rubber Co. v. Pacific Transfer Co.*, 120 Wash. 665, 208 Pac. 55, wherein, among other things, we said:

"If, on the contrary, when the fact of the theft was disclosed, the burden rested on the respondent (bailor) to show such negligence of the appellant (bailee) as contributed to the theft, then the judgment must be reversed, because it failed to produce such proof."

And while these authorities pertain primarily to the burden of proof, they show that the burden relates to some act of negligence on the part of the bailee that contributed to the loss complained of so as to fix liability upon the bailee.

In this view of the law, we think the evidence in this case shows liability on the part of the bank for the bonds and stamps stolen from the vault.

Concerning the plaintiff's cross-appeal, a different situation is presented. As to those bonds, the bank was a gratuitous bailee. The safe in which they were kept was shown to have been the safest place in the bank. The customers were familiar with the banking room and building and the means provided for the safe-keeping of valuables. In the same part of the safe in which the bonds in question were kept, the bank had a quantity of its own property, consisting of notes, mortgages, government bonds as collateral and other instruments, all of which were taken with those involved in this action. Contention is made that it was the duty of the bank to have kept the bonds in the inner so-called burglar proof chest in the safe, but the testimony shows that it was designed and used for the

purpose of storing the silver and gold coin and other money of the bank used in its business and that the capacity of the chest was insufficient for that purpose much of the time. It satisfactorily appears that the bank exercised reasonable care as to the place in which the property was kept and in the care it gave to it while it was in its custody. The bank gave to the bonds not only the same care it did to similar property of its own, but also that care which we think the circumstances required and which an ordinarily prudent person, in the situation of the bank, would bestow on his own property of the same character. 6 C. J., Bailment, p. 1125, § 65.

The judgment is in all respects affirmed.

PARKER, C. J., MACKINTOSH, BRIDGES, and HOLCOMB, JJ., concur.