[No. 36627.   Department Two.   December 19, 1963.]

CHESTER CHALOUPKA, *Respondent*, v. PAUL CYR, *Appellant.**

*Keesling & Lambert* and *James J. Keesling,* for appellant.

*Charles W. Johnson* and *Brooks K. Johnson,* for respondent.

DONWORTH, J.—This is an appeal by defendant bailee from a judgment entered upon plaintiff's claim.  The complaint alleged that plaintiff delivered his Oldsmobile automobile to defendant, a body repairman, for the purpose of having several minor repairs made thereto, and that, while it was in defendant's possession, the car caught fire because of defendant's negligence, thus causing a total loss.  The answer denied any negligence, and affirmatively alleged that the fire was caused by "a short in the electrical

*Reported in 387 P. (2d) 740.

system." The trial to the court sitting without a jury resulted in a judgment for a total of $1,037.60, including stipulated damages ($1,000) and costs ($37.60).

There is no substantial issue of fact in this case. Respondent (bailor) delivered his automobile to appellant (bailee) to have certain minor repairs made. While in the bailee's possession, prior to his doing any work on the car, the vehicle was destroyed by fire from an unknown cause.

The findings of fact of the trial court reflect the essential facts of the case. Of the 10 findings of fact, only No. 9 (which is really a conclusion of law) is challenged by appellant. The following are the trial court's findings of fact, which are important to this appeal:

"II. That on and prior to July 11, 1961 the Defendant operated an automobile repair shop in Pierce County, Washington under the name of Frenchie's Body and Fender Shop.

"III. That on and prior to July 11, 1961, the Plaintiff was the owner of a 1958 Oldsmobile 88 2-door sedan automobile.

"IV. That shortly prior to July 11, 1961, the Plaintiff and the Defendant entered into an oral agreement, whereby the Defendant engaged to perform certain repairs to the Plaintiff's said automobile, and also engaged to take the car to a specified radio repairman for the purpose of having the radio in said car repaired; and that the parties agreed that the Defendant would be compensated for these services.

"V. That the Plaintiff delivered said automobile into the possession of the Defendant at his place of business sometime during the afternoon of July 11, 1961, for the purpose of having repairs made as above stated; that thereafter, on that day or the day following, the Defendant accepted full time employment at an auto wrecking establishment near Tacoma, which is located 10 or 12 miles distant from his own place of business, and which is located across the street from the place of business of the radio repairman who was to repair the radio of the Plaintiff's car.

"VI. That on July 14, 1961 the Defendant drove the Plaintiff's said automobile from his own place of business to his place of employment, arriving shortly before 9:00 o'clock in the morning; that the Defendant parked said automobile on an outside parking lot on the premises where he was employed; that the Defendant worked during that

entire day in an open area a short distance away, at a place in full view of said automobile; that shortly before 4:30 in the afternoon of said day, the Defendant discovered the Plaintiff's said automobile to be on fire; and that said fire was ultimately extinguished by the fire department.

"VII. That the Plaintiff's said automobile was in good operating condition at the time it was left with the Defendant; that as a result of said fire, the automobile was almost totally destroyed, and was thereafter sold for salvage; and that by stipulation the parties have agreed that the amount of the damage to said automobile resulting from the fire is $1,000.00.

"VIII. That after the fire was extinguished, the upholstery in the front seat was found to be completely burned, and that in the back seat was substantially burned; that there was considerable fire damage to and under the dash on the inside; that the outside paint was severely damaged from the lower glass line up, and from the cowl to the rear of the car, but was not damaged forward of the cowl or on the hood; that all of the glass was broken or damaged beyond repair; and that there was no damage to the motor or the front end.

"IX. That the fire started somewhere in the passenger compartment; that neither party has established the cause of the fire; and that the Defendant has failed to establish that the fire did not result from his negligence."

The trial court also entered the following conclusion of law:

"III. That the liability of the Defendant results from the presumption of negligence arising from his failure to deliver the automobile back to the Plaintiff in good condition, and his failure to show by evidence that the damage to said automobile did not result from his negligence."

The legal issue to be decided on this appeal arises from finding of fact No. 9 (which is really a conclusion of law) and from conclusion of law No. 3. This issue can be briefly stated: who has the burden of proving negligence of the bailee when only the delivery of possession to the bailee and subsequent damage to the property are shown.

Ordinarily the rule is that a bailee is only liable for loss or damage to a bailed chattel where he has failed to exercise ordinary care under the circumstances; the

bailee is not an insurer. *Jones v. Warner,* 57 Wn. (2d) 647, 359 P. (2d) 160 (1961); *Ramsden v. Grimshaw,* 23 Wn. (2d) 864, 162 P. (2d) 901 (1945); *Burley v. Hurley-Mason Co.,* 111 Wash. 415, 191 Pac. 630 (1920); *St. Paul Fire & Marine Ins. Co. v. Chas. H. Lilly Co.,* 48 Wn. (2d) 528, 295 P. (2d) 299 (1956).

In the *Jones* case, the rule is stated as follows:

"A bailee is not an insurer of property placed in his charge, but is only required to exercise ordinary care. *Carley v. Allen,* 31 Wn. (2d) 730, 198 P. (2d) 827. But where property not perishable in nature is delivered to a bailee in good condition, and is not returned or is returned damaged, a presumption arises of negligence on the part of the bailee and casts upon him the burden of showing the exercise of ordinary care. *Burley v. Hurley-Mason Co.,* 111 Wash. 415, 191 Pac. 630. However, the presumption does not arise unless it appears that the subject of the bailment is of such a nature that loss or injury could not ordinarily have occurred without negligence on the part of the bailee. *Patterson v. Wenatchee Canning Co.,* 53 Wash. 155, 101 Pac. 721."

█ The rule followed in numerous decisions in this state on the question of burden of proof in bailment cases where property is lost or damaged while in the bailee's possession, is that a prima facie case, or presumption, is raised when the bailor shows nonreturn, loss, damage or destruction to bailed property. *Althoff v. System Garages, Inc.,* 59 Wn. (2d) 860, 371 P. (2d) 48 (1962); *Jones v. Warner, supra; Ramsden v. Grimshaw, supra; Goodwin v. Georgian Hotel Co.,* 197 Wash. 173, 84 P. (2d) 681, 119 A.L.R. 788 (1938); *Burley v. Hurley-Mason Co., supra; Russell v. Union Mach. & Supply Co.,* 88 Wash. 532, 153 Pac. 341 (1915); *Parker v. Washington Tug & Barge Co.,* 85 Wash. 575, 148 Pac. 896 (1915); *Kingsley v. Standard Lbr. Co.,* 84 Wash. 189, 146 Pac. 369 (1915); *Colburn v. Washington State Art Ass'n,* 80 Wash. 662, 141 Pac. 1153 (1914); *Patterson v. Wenatchee Canning Co.,* 53 Wash. 155, 101 Pac. 721 (1909); *Pregent v. Mills,* 51 Wash. 187, 98 Pac. 328 (1908).

However, if the bailee can show that he has exercised due care or can show the loss was caused by burglary, larceny, fire, or other causes which of themselves do not point to negligence on the part of the bailee, he can rebut the presumption. *Jones v. Warner, supra; Dohrmann Hotel Supply Co. v. Owl Transfer & Storage Co.,* 19 Wn. (2d) 522, 143 P. (2d) 441, 149 A.L.R. 1108 (1943); *Goodwin v. Georgian Hotel Co., supra; Birk v. Bremerton,* 137 Wash. 119, 241 Pac. 678 (1925); *McDonald v. Wm. D. Perkins & Co.,* 133 Wash. 622, 234 Pac. 456, 40 A.L.R. 859 (1925); *Harland v. Pe Ell State Bank,* 122 Wash. 289, 210 Pac. 681 (1922); *Firestone Tire & Rubber Co. v. Pacific Transfer Co.,* 120 Wash. 665, 208 Pac. 55, 26 A.L.R. 217 (1922); *Colburn v. Washington State Art Ass'n, supra; Patterson v. Wenatchee Canning Co., supra.* By rebutting the presumption, the burden is on the bailor to show that negligence of the bailee resulted in the loss or damage to the bailed property.

One bailment case states that presumption is sufficient only to get the plaintiff past a nonsuit. *Murphy v. Schwark,* 117 Wash. 461, 201 Pac. 757 (1921). This is the usual result reached when dealing with presumptions.

The weight of authority (8 Am. Jur. (2d), Bailments § 315) appears to be that where the bailor shows that the failure of the bailee to return the subject of the bailment in its original condition was because it was damaged or destroyed by fire while in the bailee's possession, the burden of proving negligence remains on the bailor.

In *Birk v. Bremerton,* 137 Wash. 119, 241 Pac. 678 (1925) the plaintiff's goods were stored in the city's warehouse when they were destroyed by fire of unknown origin. In holding that the city was not liable, this court said, at page 121:

"The law with reference to the liability of warehousemen is well settled. A warehouseman is bound to exercise ordinary diligence only. *Colburn v. Washington State Art Ass'n,* 80 Wash. 662, 141 Pac. 1153, L.R.A. 1915A 594. When, however, it is shown that the loss is occasioned by larceny, burglary, fire, or other cause which of themselves do not

point to negligence on the part of the bailee, the bailee has then met the *prima facie* case made against him by his failure to return the goods, and the burden of proof as to negligence then rests upon the plaintiff as in any other case of alleged negligence. *Colburn v. Washington State Art Ass'n, supra; Firestone Tire & Rubber Co. v. Pacific Trans. Co.,* 120 Wash. 665, 208 Pac. 55, 26 A.L.R. 217; *Harland v. Pe Ell State Bank,* 122 Wash. 289, 210 Pac. 681; *McDonald v. Perkins & Co.,* 133 Wash. 622, 234 Pac. 456.

"In the last cited case, we said that appellant in that instance did not show the loss to fall within any of the exceptions as to the liability of the bailee upon failure to return the goods, of fire, theft, leakage, or act of God. In this case, appellant brought itself within the recognized exceptions as to liability of a bailee for storage, and comes within the rule stated in the foregoing cases."

In the present case, respondent produced as a witness a captain of Pierce County Fire District No. 2, who was called to the parking lot and arrived while the car was still smoldering. He examined the car thoroughly after the fire was extinguished and testified to its condition. He was examined by respondent's counsel and stated, in part, as follows:

"Q. Does your Fire Department make any investigation of these things as to the possible cause of the fires? A. No, we do at times, but being rather short handed we are limited. Q. Do you know if any investigation was made as to the cause of this particular fire? A. No, I don't. Not that I know of. Q. Is there anything in your official report that would indicate the cause of the fire? A. No. Q. Did you make any tests as to the wiring system or the electrical system of any kind? A. No."

Thus respondent, in his case in chief, showed that appellant's failure to return the car in its original condition was due to this fire. Consequently, he had the burden of proving that the fire was caused by appellant's negligence, which he failed to do.

As to why he failed to redeliver the car to respondent in the same condition as when he received, appellant made the following explanation:

That the car was delivered to him at his shop (which was located on his home property) on or about July 11,

1961. The parties agreed that, for $20, appellant was to fix a dent in the dash and one in the bumper, and to drive the car to Mr. Brown's radio repair shop. As appellant was not a radio repairman, the radio was to be removed and repaired by Mr. Brown, who does radio repair work only in his spare time (evenings and week ends).

About that time, appellant accepted temporary full-time employment with United Auto Wrecker, whose place of business was across the street from Mr. Brown's place of business.

July 14, 1961, appellant drove the car to the place of business of United Auto Wrecker when he went to work there about 9 a.m. and parked it in the parking lot. He did not smoke any cigarettes while he was in the car. He worked outdoors where the car was in his range of vision all day. Between 4 and 4:30 p.m., the fire in the car occurred.

Appellant's testimony regarding it is as follows:

"Q. What first attracted your attention to the car? A. I was working and then all of a sudden I heard a horn blowing, so I looked around and I didn't see anyone, so I kept on working and the horn kept on blowing; then all of a sudden I looked at the car and I see the windows were all black. I ran to the car and opened the door to see what was going on, and there was an explosion, it must have knocked me about close to ten feet away from the car. Q. Then what did you do? A. It burned the side of my face. Q. Then what did you do? A. Then I ran towards United Auto and told Mr. Medley that I had a fire in the back and I needed some men to come out there and put it out. I picked up some water and ran back towards the car and Mr. Medley himself called the Fire Department. Q. Did Mr. Medley come out? A. No, he had to look after the office. Q. The Fire Department had to put the fire out? A. Definitely, yes. Q. You describe it as almost an explosion when you opened the door? A. As soon as I opened the door that is when it blew up. Q. Did you look at the car later? A. I beg your pardon? Q. Did you inspect the car after—? A. After the fire was out I looked at it, yes. Q. Do you have any knowledge of where the fire started? A. According to my knowledge, I would say that the fire started under the dash somewhere. Q. You don't know where it started?

A. No. Q. Was all of the upholstery burned in the back seat? A. No, most of the fire was in front, the dash was all burned down, the windshield was all crinkled to sand. In the back seat there was still upholstery in it. I would say that the fire was in the front part of the car. Q. After the fire did you report to Mr. Chaloupka? A. I did. It was the first thing I did."

On cross examination, appellant described his attempts to put the fire out until the firemen arrived, which was "almost instantly."

Mr. Medley, the owner of United Auto Wrecker, who was present in his office at the time of the fire and had purchased the damaged car body from the insurance company, was called as the only witness for appellant. His testimony is substantially the same as appellant's. He further testified as follows:

"Q. Mr. Medley, you are in the business of dismantling wrecked cars, is that right? A. Yes, sir; for twelve years. Q. You have seen cars burned before? A. I have seen cars after they were burned. Q. Did you inspect this car at my request? A. Yes, sir; about two days ago. Q. Were you able to ascertain where the fire may have started? A. Well, my judgment is that it started in the forward part behind the firewall and in front of the front seat. Q. Do you have an opinion as to how the fire started? A. No sir."

In his cross examination he described in detail the condition of the car after the fire. In the course of his testimony, he stated:

"A. Well, the complete front end that would be from the cowl forward was not damaged, we sold that. The back from the window, the rearmost window back to the end of the deck was not burned up, but the middle of the car from the cowl to the back of the back glass was gutted almost completely except for the very back of the back seat where there was some tufts of upholstery material. Q. In other words, the damage was about in the area of the car where the front seat is, is that correct? A. It would be more concentrated under or near the dash or the cowling. Q. Do you remember the condition of the motor when you bought the car back? A. When we bought the car? Q. Yes. A. There was no mechanical damage, that is in reference to the block or the cast iron parts, but there was some dam-

age as I recall to the electrical parts which would include the wiring, etc. Q. The motor itself? A. The motor itself was all right. Q. In fact that is the reason you bought it back and paid that much? A. We bought the car for the front sheet metal and for the engine, the rest was of no value."

Thus this case comes within an exception to the general presumption, that is, the presumption of liability is rebutted when the loss is shown to have been caused by fire. The result is that the trial court's judgment must be reversed.

■ Here the damage was not of a kind that ordinarily does not occur without negligence. In *Grange v. Finlay*, 58 Wn. (2d) 528, 364 P. (2d) 234 (1961) (which did not involve a bailment), we discussed the question of the quantum of proof of negligence necessary to establish liability in connection with a fire. At page 531, this court said:

"Negligence cannot be assumed merely because the evidence shows that a fire occurred or an accident happened. *Cambro v. Snook*, 43 Wn. (2d) 609, 262 P. (2d) 767. As we said in that case, it must be established by evidence or by legitimate inference from the established facts.

"Here the proof of the cause of the fire necessarily rested upon circumstantial evidence. In regard to such evidence, this court has said:

" 'The rule is well established that the existence of a fact or facts cannot rest in guess, speculation, or conjecture. It is also the rule that the one having the affirmative of an issue does not have to make proof to an absolute certainty. It is sufficient if his evidence affords room for men of reasonable minds to conclude that there is a greater probability that the thing in question, such as the occurrence of a fire, happened in such a way as to fix liability upon the person charged therewith than it is that it happened in a way for which a person charged would not be liable. In applying the circumstantial evidence submitted to prove a fact, the trier of fact must recognize the distinction between that which is mere conjecture and what is a reasonable inference.' *Home Ins. Co. of New York v. Northern Pac. R. Co.*, 18 Wn. (2d) 798, 140 P. (2d) 507, 147 A.L.R. 849, quoted with approval in *Cambro v. Snook, supra.*

"A corollary of this rule is that, if there is nothing more substantial to proceed upon than two or more conjectural theories, under one or more of which a defendant would

be liable, and under one or more of which there would be no liability upon him, a jury will not be permitted to conjecture how the accident occurred. *Gardner v. Seymour,* 27 Wn. (2d) 802, 180 P. (2d) 564."

Appellant fully disclosed all information within his knowledge as to the origin of the fire. We have set forth the salient parts of the evidence produced by him. In our opinion, he explained the cause of the damage to the full extent that was reasonably possible under the circumstances. The trial court held that this was not enough and that appellant had the burden of proving a negative, to wit, that the fire was *not* caused by his negligence.

We hold that under the circumstance of this case the burden, at the close of all the evidence, was upon respondent to establish, by a preponderance of the evidence, that the fire was caused by appellant's negligence. There must be some evidence produced by the bailor from which negligence can be found. Of course, the bailor need not prove negligence to an absolute certainty. The trial court found, or concluded, that neither party had established the cause of the fire. It granted respondent judgment for the reason that appellant had failed to establish, by a preponderance of the evidence, that the fire did *not* result from his own negligence. In our opinion, the trial court erred in so holding.

Accordingly, the judgment is reversed with instructions to dismiss the action.

OTT, C. J., FINLEY, WEAVER, and HAMILTON, JJ., concur.