IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| MICHAEL D. MONTGOMERY, | No.  48761-6-II |
| Respondent, | |
| v. | |
| DENNIS J. MONTGOMERY and MIA MONTGOMERY, husband and wife, | UNPUBLISHED OPINION |
| Appellants. | |

WORSWICK, J. — Michael Montgomery filed a lawsuit against his father, Dennis Montgomery, and his stepmother, Mia Montgomery, following Dennis and Mia's sale and disposal of Michael's personal belongings.[1]  During the first jury trial, the trial court granted Michael's motion for mistrial and imposed sanctions in the form of attorney fees and costs resulting from the mistrial.  Before the second jury trial, the trial court granted Michael's motion for partial summary judgment on the issue of liability.  The case proceeded to trial on the issue of damages, and the jury returned an award of $24,000.

Dennis and Mia appeal, arguing that the trial court erred by (1) granting Michael's motion for mistrial, (2) imposing sanctions against Dennis and Mia for attorney fees and costs caused by the mistrial, (3) offering to impose sanctions against Dennis and Mia if Michael requested a mistrial, and (4) granting Michael's motion for partial summary judgment.  We affirm.

---

[1] We refer to the Montgomerys by their first names for clarity and intend no disrespect.

FACTS

I. BACKGROUND

On December 27, 2012, Michael was sentenced in federal court to five years in prison and was unexpectedly taken into custody immediately following the sentencing hearing. After Michael's sentencing hearing, his family, including Dennis, Mia, and Michael's mother, Pamela Reed, met to determine how to manage Michael's affairs. The family agreed that Dennis would travel to Michael's residence in Colorado and move Michael's personal belongings to Tacoma.

Dennis returned from Colorado with Michael's belongings on December 31. The next day, Dennis notified Reed that he planned to dispose of Michael's belongings. Reed was able to retrieve some of Michael's irreplaceable possessions. Dennis then stored Michael's furniture in his garage and discarded the remainder of Michael's possessions.

On January 31, 2013, Dennis contracted with an auctioneer to sell Michael's furniture housed in Dennis's garage. Dennis received $3,395.75 from the auction and kept the proceeds. Michael did not give Dennis permission to dispose of his possessions or to keep the sale's proceeds.

Prior to Michael's lawsuit, several events occurred that became important in the course of the first trial. Shortly after returning from Colorado with Michael's belongings, Dennis had a brief stay in the hospital. Dennis was hospitalized from approximately January 9 until January 17. While Dennis was in the hospital, Mia obtained a no-contact order against him. The no-contact order was granted on January 10 and terminated on January 24. Also, Reed became Michael's power of attorney on January 22. The power of attorney permitted Reed to "buy, sell,

mortgage, hypothecate, and in any and every way and manner deal in and with goods . . . and other property in possession or in action." Clerk's Papers (CP) at 282.

Michael filed a lawsuit against Dennis and Mia for conversion, fraud, trespass to chattels, and theft. The parties engaged in pretrial discovery. During his deposition, Dennis stated that he had control of Michael's belongings and that he alone decided to sell and dispose of them. Dennis also stated that he intentionally disposed of Michael's property. During Mia's deposition, she stated that Dennis decided to auction Michael's furniture because Reed would not take responsibility for the furniture.

Dennis and Mia conducted very little discovery. Michael did not disclose Reed's power of attorney during discovery because no such information was sought. However, Michael specifically asked Dennis and Mia about their authority to dispose of Michael's property. During Dennis's deposition, Michael's counsel asked:

> [MICHAEL'S COUNSEL]: Okay. But it wasn't your decision to get rid of that stuff only. It was a collective decision?
> [DENNIS]: No. It was my decision . . . .
> . . . .
> [MICHAEL'S COUNSEL]: . . . "Who has control of [Michael's] stuff," . . . ?
> [DENNIS]: I had control of [Michael's] stuff.
> [MICHAEL'S COUNSEL]: Through permission from [Reed] via [Michael]?
> [DENNIS]: No.

CP at 424-26.

## II. FIRST JURY TRIAL

The matter proceeded to a jury trial. During trial, the following exchange took place between Dennis and Mia's attorney (defense counsel) and Reed:

> [DEFENSE COUNSEL]: Who handles [Michael's] affairs on the outside that need to be handled, is that you?

> [REED]: I would say pretty much, yeah.
> [DEFENSE COUNSEL]: Do you have a power of attorney?
> [REED]: Yes, I do.
> . . . .
> [DEFENSE COUNSEL]: So if you spoke on his behalf, or particularly as it relates to anything that he owned or had, you were speaking for him?
> [REED]: I guess so.

3 Verbatim Report of Proceedings (VRP) at 62-63.

Dennis testified at trial that he e-mailed Reed, telling her that if she did not store Michael's furniture by January 20, Dennis would sell the items.[2] Dennis further testified:

> [DEFENSE COUNSEL]: Between the time of the day unloading the truck, did anyone give you permission or Mia permission . . . to sell the property?
> [DENNIS]: Yes.
> [DEFENSE COUNSEL]: Who?
> [DENNIS]: [Reed].
> [DEFENSE COUNSEL]: How do you know that?
> [DENNIS]: Mia told me.
> [DEFENSE COUNSEL]: At the time of this permission, what authority did [Reed] have to give permission for you to sell?
> [DENNIS]: I believe she had a power of attorney for [Michael].

3 VRP at 84-85. During discovery, Dennis and Mia did not disclose any purported phone conversation between Reed and Mia.

After Dennis's trial testimony regarding Mia's phone call to Reed, Michael's counsel stated that "[t]his new twist with Mia is outrageous" and noted that the phone call was never mentioned during discovery, despite him asking Dennis and Mia about their permission to sell Michael's belongings. VRP (May 11, 2015) at 6. The trial court then engaged in voir dire examination of Dennis:

> [THE COURT]: Mr. Montgomery, how did you find out that . . . Reed had a power of attorney?

---

[2] Reed denied receiving this e-mail.

4

[DENNIS]: It was one of the—[the day of Michael's sentencing hearing], she said, I have to get a Power of Attorney.
. . . .
[THE COURT]: She didn't have one.
[DENNIS]: Not at that point, no.
[THE COURT]: When did you find out that she had one? And how did you find out?
[DENNIS]: I have a mind block. I don't recall.
. . . .
[THE COURT]: When was the last time that you talked to . . . Reed before you sold the property or had the property sold?
. . . .
[DENNIS]: I recall [Reed] and I having a conversation before January 9th—before January 6th. . . .
. . . .
[THE COURT]: Did Mia tell you that Ms. Reed had a Power of Attorney?
[DENNIS]: No. I don't think that she understands what a Power of Attorney is.

VRP (May 11, 2015) at 16-23.

The court then attempted to clarify the date that Dennis became aware of the phone call where Reed told Mia to sell the remainder of Michael's belongings:

[THE COURT]: Did [Mia] say who called who?
[DENNIS]: She said that she called [Reed].
[THE COURT]: Did she say when she did this?
[DENNIS]: I don't recall.
[THE COURT]: This is while you were in the hospital?
[DENNIS]: Probably. Which phone call in the hospital?
[THE COURT]: The phone call with Ms. Reed about selling the property.
[DENNIS]: I believe that is when I was in the hospital.
[THE COURT]: But Mia wasn't able to tell you about any of this until after the restraining order was lifted.
[DENNIS]: That's correct.

VRP (May 11, 2015) at 26-27. Dennis also testified that he did not communicate with Mia while the no-contact order was in place.

After Dennis testified, defense counsel argued that Reed had authorized or consented to the sale of Michael's belongings as his power of attorney. Dennis and Mia had not pleaded

consent or authorization as affirmative defenses prior to trial, and defense counsel did not file an amended answer.

### III. MOTION FOR MISTRIAL

Following its voir dire examination of Dennis, the trial court broached the topic of a mistrial with sanctions, and Michael moved for a mistrial along with sanctions for attorney fees and costs caused by the mistrial. Michael stated:

> [T]here were multiple instances where the defense or the counsel could have informed me of this defense. . . . For the integrity of our system here, when a person is asked specifically, did you have any authority to sell those goods? And the answer is "no." Or, you know, did [Reed] ever contact you or Michael about whether to sell these things? Not that I know of. . . .
> Judge, to be misleading and potentially perjury, especially in my interrogatories and my deposition questions, it is a problem. I feel like the defendants haven't been very upfront and honest about this case. It is putting me in a really tough spot to proceed.

VRP (May 11, 2015) at 38-39.

Michael argued that he was disadvantaged because he had no prior notice that Dennis was going to assert that Reed gave permission or that Dennis would use Reed's power of attorney as a defense, and he noted that the defense was not raised until the fifth day of trial. Defense counsel argued that Dennis and Mia did not actively withhold evidence because neither Dennis nor Mia understood the legal significance of Reed's power of attorney. Defense counsel also stated that he did not disclose the phone conversation between Mia and Reed in discovery because the conversation "had absolutely no legal impact whatsoever on the defenses available to [Dennis]." VRP (May 11, 2015) at 44.

The trial court granted Michael's motion for mistrial. The court determined that Michael was prejudiced and that there had been "misconduct by the defense in terms of its lack of

forthrightness during discovery." VRP (May 11, 2015) at 55. The court also noted that the defense failed to plead all affirmative defenses. The court awarded Michael $10,115 in attorney fees and $600 in costs as a result of the mistrial.

## IV. MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY

Prior to the second jury trial, Michael moved for partial summary judgment, arguing that Dennis was a gratuitous bailee and was liable for the sale and disposal of Michael's belongings because of Dennis's gross negligence and conversion of Michael's property. Michael argued that no genuine issue of material fact existed regarding Dennis and Mia's liability because Reed's power of attorney was irrelevant and no other defenses applied. Dennis and Mia disagreed, contending that Michael abandoned his property when Reed failed to secure his belongings and that Michael consented to the sale of his belongings when Reed gave permission to Mia, even though Dennis and Mia testified that Reed never told them that she was Michael's power of attorney.

The trial court granted Michael's motion for partial summary judgment. The case then proceeded to trial regarding damages owed to Michael. The jury returned an award of $24,000. Dennis and Mia appeal.

## ANALYSIS

### I. MISTRIAL

Dennis and Mia argue that the trial court erred in granting Michael's motion for mistrial because Michael was not prejudiced by Dennis and Mia's failure to disclose evidence regarding Reed's purported authorization of Dennis and Mia's sale of Michael's personal property. We disagree.

A trial court's decision to grant or deny a motion for mistrial is reviewed for abuse of discretion. *Adkins v. Aluminum Co. of Am.*, 110 Wn.2d 128, 136-37, 750 P.2d 1257 (1988). A trial court abuses its discretion when its decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Breckenridge v. Valley Gen. Hosp.*, 150 Wn.2d 197, 203, 75 P.3d 944 (2003) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). A trial court has broad discretion in conducting trial and dealing with irregularities that arise. *State v. Wade*, 186 Wn. App. 749, 773, 346 P.3d 838, *review denied*, 184 Wn.2d (2015). A trial court should grant a mistrial only when the harmed party has been so prejudiced that only a new trial can remedy the error. *See* 186 Wn. App. at 773.

The trial court is in the best position to gauge the prejudicial impact of counsel's conduct on the jury. *State v. Lord*, 117 Wn.2d 829, 887, 822 P.2d 177 (1991). When the grounds for granting a mistrial involve the assessment of misconduct during the trial and its potential impact on the jury, we give the trial court "great deference." *Levea v. G. A. Gray Corp.*, 17 Wn. App. 214, 226, 562 P.2d 1276 (1977). We will not "substitute our own judgment for the trial court's judgment in evaluating the scope and effect of . . . misconduct." *Teter v. Deck*, 174 Wn.2d 207, 226, 274 P.3d 336 (2012).

Here, Dennis testified in his deposition that he had control of Michael's belongings and that he alone decided to sell and dispose of them. Dennis also stated that he intentionally disposed of Michael's property. Mia stated during her deposition that Dennis decided to auction Michael's furniture because Reed would not take responsibility for the furniture. Mia's purported phone conversation with Reed was not disclosed during discovery. Dennis and Mia had not pleaded consent or authorization as affirmative defenses before trial.

Then, during the first jury trial, defense counsel elicited testimony that Reed became Michael's power of attorney and that Reed called Mia, telling her to sell Michael's belongings. Dennis and Mia then argued that Reed had authorized them to sell Michael's belongings and that she had abandoned the belongings by not securing them prior to their sale.

Michael moved for mistrial, arguing that he was not prepared to defend against these new defenses and noting that these issues were not raised until the fifth day of trial. The trial court agreed and granted Michael's motion. The court determined that Michael was prejudiced and that there had been "misconduct by the defense in terms of its lack of forthrightness during discovery." VRP (May 11, 2015) at 55. The trial court also noted that defense counsel failed to adhere to his obligation to plead all affirmative defenses. The court continued: "I don't think plaintiff gets a fair trial here even if all of this stuff was hashed out and presented in front of the jury because it was sprung as a surprise and it shouldn't have been." VRP (May 11, 2015) at 55.

We give great deference to the trial court's conclusion that a mistrial was necessary due to defense counsel's failure to disclose Mia's purported phone call and failure to plead consent and authorization as affirmative defenses. We also defer to the trial court's appraisal that these failures prejudiced Michael. Under these circumstances, it was reasonable for the trial court to conclude that Michael was so prejudiced by defense counsel's failure to disclose the phone call and to plead consent or authorization that a new trial was his only remedy. Therefore, the trial court did not abuse its discretion in granting Michael's motion for mistrial.

## II. IMPOSITION OF SANCTIONS

Dennis and Mia also argue that the trial court erred in imposing sanctions against them for attorney fees and costs caused by the mistrial. We disagree.

9

The decision to impose sanctions is within the sound discretion of the trial court. *Woodhead v. Disc. Waterbeds, Inc.*, 78 Wn. App. 125, 133, 896 P.2d 66 (1995). "The purposes of sanctions orders are to deter, to punish, to compensate and to educate. Where compensation to litigants is appropriate, then sanctions should include a compensation award." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 356, 858 P.2d 1054 (1993) (plurality opinion).

During the first jury trial, defense counsel elicited testimony from Dennis that Reed told Dennis and Mia to sell Michael's belongings. Mia's purported phone conversation with Reed was not disclosed during discovery, despite Michael's request for Dennis's authority to dispose of Michael's belongings. Michael moved for mistrial and for an award of sanctions for attorney fees and costs caused by the mistrial. Michael noted that five days of trial could have been avoided and that he could not afford a mistrial if he was not awarded sanctions. The trial court determined there had been "misconduct by the defense in terms of its lack of forthrightness during discovery," and it awarded Michael $10,115 in attorney fees and $600 in costs. VRP (May 11, 2015) at 55.

The trial court determined that sanctions were appropriate to compensate Michael for the costs associated with the first trial. Additionally, the trial court found that sanctions were necessary to punish defense counsel for his lack of forthrightness during discovery. Because it was reasonable for the trial court to impose sanctions on Dennis and Mia under these circumstances, the court did not abuse its discretion.

10

### III. TRIAL COURT OFFERING SANCTIONS

Dennis and Mia briefly argue that the trial court abused its discretion by offering to award sanctions against Dennis and Mia if Michael requested a mistrial. However, Dennis and Mia fail to cite to authority or provide analysis in support of this argument. Failure to provide argument and citation to authority in support of an assignment of error precludes appellate consideration. RAP 10.3(a)(6); *Escude ex rel. Escude v. King County Pub. Hosp. Dist. No. 2*, 117 Wn. App. 183, 190 n.4, 69 P.3d 895 (2003). Accordingly, we do not address this issue.

### IV. PARTIAL SUMMARY JUDGMENT ON LIABILITY

Dennis and Mia also argue that the trial court erred in granting Michael's motion for partial summary judgment on liability because a genuine issue of material fact existed regarding whether Dennis was liable for the sale of Michael's property as a gratuitous bailee. We disagree.

A. *Standard of Review*

We review a trial court's decision to grant or deny a motion for summary judgment de novo. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). When reviewing an order of summary judgment, we view the evidence, and all reasonable inferences allowed by that evidence, in the light most favorable to the nonmoving party. 176 Wn.2d at 922. Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton Condo. Apartment–Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

"Summary judgment is subject to a burden-shifting scheme." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). The moving party bears the initial burden of showing that no material fact exists. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). If the moving party satisfies its burden, the nonmoving party must present evidence demonstrating that material facts are in dispute. 154 Wn.2d at 26. If the nonmoving party fails to show that there is a dispute of material fact, summary judgment is proper. 154 Wn.2d at 26.

B.    *Gratuitous Bailment*

Prior to the second jury trial, Michael filed a motion for partial summary judgment, arguing that Dennis was liable as a gratuitous bailee because he (1) acted with gross negligence and (2) converted Michael's belongings when he disposed of and sold them. Dennis and Mia argue that genuine issues of material fact exist regarding Dennis's liability as a gratuitous bailee for the sale of Michael's belongings because Reed, as Michael's power of attorney, authorized the conversion of Michael's belongings.[3] We disagree with Dennis and Mia and hold that the partial summary judgment was proper.

---

[3] Dennis and Mia also appear to argue that Reed abandoned Michael's belongings by failing to secure them before they were sold at auction. However, Dennis and Mia do not provide an analysis of abandonment or citation to authority regarding abandonment's application in any instance, let alone where the issue is whether an attorney in fact can abandon the property of its principal. We will not consider an inadequately briefed argument or an argument unsupported by citation to authority and, therefore, do not address this argument. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); *Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wn. App. 474, 486, 254 P.3d 835 (2011).

   1.  Legal Principles

A bailment generally arises when a bailor delivers his personal property to the bailee for a specific purpose, pursuant to an express or implied contract to fulfill that purpose. *Eifler v. Shurgard Capital Mgmt. Corp.*, 71 Wn. App. 684, 689, 861 P.2d 1071 (1993). Inherent in the bailment relationship is the requirement that the bailee return the property to the bailor when the purpose of the bailment is accomplished or keep the property until it is reclaimed by the bailor. 71 Wn. App. at 689.

When a bailment is for the sole benefit of the bailor or as a personal favor to the bailor, the bailment is gratuitous. *Corwin v. Grays Harbor Washingtonian, Inc.*, 159 Wash. 92, 96, 292 P. 412 (1930). Here, it is undisputed that Dennis was a gratuitous bailee. When a bailment is gratuitous, the bailee is only liable for gross negligence or bad faith. *Maitlen v. Hazen*, 9 Wn.2d 113, 123, 113 P.2d 1008 (1941). "[G]ross negligence connotes the absence of slight care or diligence." 9 Wn.2d at 123 (quoting 8 C.J.S. *Bailments* § 28, at 278 (1938)). The bailee is presumed to be negligent when he does not return the bailed property to the bailor. *Chaloupka v. Cyr*, 63 Wn.2d 463, 466, 387 P.2d 740 (1963). However, the bailee can rebut this presumption if he can show that he exercised due care. 63 Wn.2d at 467.

A bailee also may be held liable for conversion when he fails to return the bailor's property. 8A AM. JUR. 2D *Bailments* § 66 (2017). "'Conversion is the unjustified, willful interference with a chattel which deprives a person entitled to the property of possession.'" *In re Marriage of Langham & Kolde*, 153 Wn.2d 553, 564, 106 P.3d 212 (2005) (quoting *Meyers Way Dev. Ltd. P'ship v. Univ. Sav. Bank*, 80 Wn. App. 655, 674-75, 910 P.2d 1308 (1996)). Accordingly, conversion occurs when a bailee wrongfully delivers the bailor's property to a third

party. 8A AM. JUR. 2D *Bailments* § 71 (2017). Neither the bailee's well-founded belief that the delivery was within his legal rights nor his exercise of any degree of care constitutes a defense. 8A AM. JUR. 2D *Bailments* § 71 (2017).

2. Gross Negligence

Michael moved for partial summary judgment, arguing that Dennis was grossly negligent for selling and disposing of Michael's belongings. We agree that the trial court's order granting Michael partial summary judgment was proper.

The evidence shows that Dennis acted with gross negligence in disposing of Michael's property. In his deposition, Dennis said that he had control of Michael's belongings and that he alone decided to sell and dispose of them. Dennis also stated that he intentionally gave away Michael's property. Mia stated during her deposition that Dennis decided to auction Michael's furniture because Reed would not take responsibility for the furniture.

Additionally, Dennis is presumed to have acted with gross negligence because he sold and disposed of Michael's belongings. *Chaloupka*, 63 Wn.2d at 466. Dennis and Mia fail to rebut this presumption with evidence of due care. It is undisputed that *Michael* did not give Dennis permission to sell or dispose of his belongings. Dennis acted without slight care or diligence because he did not contact Michael and did not determine whether he would authorize the sale and disposal.

Dennis and Mia argue that Dennis did not act with gross negligence when he sold Michael's belongings because Reed, as Michael's power of attorney, authorized the sale. Reed had obtained power of attorney on January 22, 2013. The power of attorney permitted Reed to

"buy, sell, mortgage, hypothecate, and in any and every way and manner deal in and with goods

. . . and other property in possession or in action." CP at 282.

However, Dennis and Mia did not produce any evidence that Reed authorized the sale

*after January 22, 2013*. At the first trial, Dennis testified that Mia called Reed while he was in

the hospital and that Reed gave Mia permission to sell Michael's furniture. But Dennis was

discharged from the hospital before January 22. Mia submitted a declaration stating that Reed

told her to sell Michael's furniture "at or about the time that [Reed] received the power of

attorney from Michael." CP at 528. But this statement makes it clear that Mia did not know

exactly when she called Reed and is not evidence that Reed gave permission after January 22.[4]

Therefore, Reed's alleged call cannot create a genuine issue of material fact regarding whether

Reed authorized the sale.

Dennis and Mia fail to present competent evidence that either Michael or Reed, in her

capacity as Michael's power of attorney, authorized the sale and disposal of Michael's

belongings. Viewing the evidence and all reasonable inferences from that evidence in a light

most favorable to Dennis and Mia, there are no genuine issues of material fact regarding

Dennis's liability for selling and disposing of Michael's belongings. Thus, Michael was entitled

---

[4] "'When a party has given clear answers to unambiguous [deposition] questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.'" *Marshall v. AC&S, Inc.,* 56 Wn. App. 181, 185, 782 P.2d 1107 (1989) (alteration in original) (quoting *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)). Mia's subsequent declaration contradicts her prior deposition testimony that only Dennis decided to sell Michael's furniture. Thus, Mia's declaration cannot create a genuine issue of material fact through her subsequent declaration. *Klontz v. Puget Sound Power & Light Co.*, 90 Wn. App. 186, 192, 951 P.2d 280 (1998).

to judgment as a matter of law, and the trial court did not err in granting his motion for partial summary judgment on this basis.

3. Conversion

Michael also moved for partial summary judgment, arguing that Dennis converted Michael's property. We agree that the trial court's order granting partial summary judgment on this basis was proper.

In his deposition, Dennis acknowledged that he "had control of [Michael's] stuff" after returning from Colorado and that it was his decision to dispose of Michael's belongings. CP at 426. Dennis contacted an auctioneer to sell Michael's furniture on January 31. Michael did not give Dennis permission to dispose of or sell his belongings. Dennis received $3,395.75 from the auction of Michael's furniture and did not transfer the proceeds of the sale to Michael.

It is undisputed that Dennis sold Michael's belongings without Michael's permission and kept the proceeds. This is conversion. Dennis's assertion that he believed Reed authorized the sale is of no consequence and is not a defense because his belief, even if well-founded, that the sale was legally authorized does not constitute a defense to conversion.

Viewing the evidence and all reasonable inferences from that evidence in a light most favorable to Dennis and Mia, there are no genuine issues of material fact regarding Dennis's liability for conversion of Michael's belongings. Therefore, Michael is entitled to judgment as a matter of law, and the trial court did not err in granting his motion for partial summary judgment.

CONCLUSION

We affirm the mistrial and award of sanctions, and we affirm the partial summary judgment.

No. 48761-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Maxa, A.C.J.

Sutton, J.